Bill J. BISHOP, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18581.

United States Court of Appeals Fifth Circuit.

March 15, 1961.

John F. Sheehy, Richey, Sheehy, Teeling & Cureton, Waco, Tex., for appellant.

Raymond N. Zagone, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Dept. of Justice, Russell B. Wine, U. S. Atty., San Antonio, Tex., Carl E. Mason, Asst. U. S. Atty., Waco, Tex., for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and CLAYTON, District Judge.

JOHN R. BROWN, Circuit Judge.

■ As this case comes to us once again, Bishop v. United States, 5 Cir., 1959, 266 F.2d 657, the question now relates to interest. Specifically the issue is whether interest is payable by the Government under the Declaration of Taking Act, 40 U.S.C.A. § 258a,[1] for that period of time in which withdrawal of a deficiency deposit in the Registry is prohibited by the Court pursuant to the Government's motion. The District Court, without opinion, answered in the negative. We disagree and reverse.

The facts may be severely capsulated.[2] At the time of the filing of the Declaration of Taking, May 27, 1954, a deposit of estimated compensation was made by the Government and withdrawn by the Owner in full. Thereafter hearings were held on valuation before a commissioner resulting in the determination of de-

1. 40 U.S.C.A. § 258a:
"* * * Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation * * * title to the said lands * * * specified in said declaration, shall vest in the United States * * and said lands shall be deemed to be condemned and taken * * *, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceed-

ing and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. * * *
* * * * *
"* * * Feb. 26, 1931, c. 307, § 1, 46 Stat. 1421."

2. It facilitates discussion to tabulate the chronology by steps:

| Step | Date | |
|------|------|---|
| [1] | May 27, 1954 | Declaration taking filed with deposit; estimated deposit withdrawn by Owner. |
| [2] | July 11, 1955 | Final judgment for deficiency with interest from Step [1] |
| [3] | September 8, 1955 | Deposit of deficiency with interest from Step [1] |
| [4] | September 8, 1955 | Government files notice of appeal |
| [5] | December 6, 1955 | Notice of appeal withdrawn |
| [6] | January 10, 1956 | Owner's motion for interest period Step [3] to Step [5] |
| [7] | April 27, 1956 | Government's motion set aside judgment in Step [2] |
| [8] | April 30, 1956 | Order forbidding withdrawal deposit |
| [9] | March 21, 1958 | Court vacates judgment Step [2] |
| [10] | May 13, 1959 | Opinion Court of Appeals |
| [11] | September 17, 1959 | Court vacates judgment Step [9] reinstates judgment Step [2] |
| [12] | October 8, 1959 | Registry check tendered in exact amount Step [3]. |

ficiency awards. The District Court confirmed the commissioner's awards and on July 11, 1955, entered judgments, as to each of the tracts, for the specified deficiency together "with interest thereon at the rate of six (6%) per cent per annum from May 27, 1954, until said sum, together with interest, has been deposited in the Registry of the Court." The funds were deposited on September 8, 1955, but were not then withdrawn. The Government gave notice of appeal and some time later withdrew it. The Owner filed a motion for interest during the pendency of the Government's notice of appeal. While this motion was pending, the Government filed on April 27, 1956, a motion on which the Court on April 30, 1956 entered an order, directing that the funds be retained in the Registry pending determination of the Government's claim that it, not Bishop, was the true owner by virtue of the facts discussed in our prior opinion, 266 F.2d 657. Two years later, March 21, 1958, the District Court sustained the Government's contention and entered a final judgment setting aside the earlier one of July 11, 1955. That judgment was reversed by our opinion of May 1959. This expressly directed the reinstatement of the judgment of July 11, 1955, see 266 F.2d at 666. This was done by the District Court on September 17, 1959. The Registry check tendered to the Owner was for the exact amount of the deposit of September 8, 1955. The Court thereafter denied the Owner's motion for additional interest for the period from April 30, 1956 to September 17, 1959, during which time withdrawal was prohibited by the express order.

The sole period of time now involved is from Step [8] to Step [11] during which the Owner could not obtain any of the funds. No question any longer exists from Step [3] to Step [8] or from Step [11] to the present. As to these the Owner acquiesces in the Government's contention that since the Registry funds were available, the failure to withdraw is deemed the responsibility of the Owner, and no interest is due for such periods. Atlantic Coast Line R. Co. v. United States, 5 Cir., 1943, 132 F.2d 959, 962–963; United States v. 0.45 Acres of Land, 2 Cir., 1945, 151 F.2d 114, 115.

■■■ While, in this problem, we deal with a statute, the statute is one which has constitutional overtones, and it is to be read in this light. The Declaration of Taking Act "does not bestow independent authority to condemn lands for public lands. On the contrary, it provides a proceeding 'ancillary or incidental' to suits brought under other statutes,' Catlin v. United States, * * (324 U.S. [229] at 240 [65 S.Ct. 631, at page 637, 89 L.Ed. 911])." United States v. Dow, 1958, 357 U.S. 17, at page 23, 78 S.Ct. 1039, at page 1045, 2 L.Ed. 2d 1109; In re United States, 5 Cir., 1958, 257 F.2d 844, 847. By the time of its enactment in 1931, the doctrine was unquestioned that interest was a part of just compensation not, as in a damage suit, a mere payment for delay. "Where the United States condemns and takes possession of land before * * * paying compensation, the owner is not limited to the value of the property at the time of taking; he is entitled to such addition as will produce the full equivalent of that value, paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." This is so because the compensation must be "the full and perfect equivalent of the property taken." Seaboard Airline Railway Co. v. United States, 1923, 261 U.S. 299, 304, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664. Citing this case specifically, the Court reiterated this in the broadest of terms. "The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller,

1943, 317 U.S. 369, 373 and note 9, 63 S.Ct. 276, 279, 87 L.Ed. 336.

■ This Act is a mechanism by which to facilitate the exercise of the sovereign's power of eminent domain and give full practical protection to both Government and owner alike. It could not have been intended to whittle down the property owner's rights for "interest from the date of taking is usually a part of just compensation to be paid and cannot be denied by statute." Atlantic Coast Line R. Co. v. United States, 5 Cir., 1943, 132 F.2d 959, 962. "The purpose of the statute is two-fold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property. * *" United States v. Miller, supra, 317 U.S. at page 381, 63 S.Ct. at page 283. The objective of the latter is to give "the owner the immediate use of cash approximating the value of his land." 317 U.S. 381, 63 S.Ct. 284.

■ Congress did not, by word "deposit" in § 258a, note 1, supra, mean that the Constitutional mandate of just compensation would be satisfied by the mere act of delivering cash to some depository. It contemplates a transfer of funds for the effectual withdrawal and use by the former owner of the property taken. Unless that were so, it could not constitute a "payment * * of estimated compensation * * *" or "a payment 'on account of' compensation," 317 U.S. at page 381, 63 S.Ct. at page 284.

■ This essential purpose of the deposit is not achieved where, by action of the Government as the petitioning litigant, the right to the immediate use of the sum in the Registry is denied to the owner. This view does not thwart or impede action which the Government thinks essential to protect its interests. If in its judgment valuation is too high or even if it still attacks the owner's title adjudicated by the judgment of condemnation,[3] it may appeal. To effectually protect its rights, it is entirely proper for it to seek protective orders forbidding the disbursement of Registry funds. But when it does that, the money is no longer available to the owner. He is now deprived both of the enjoyment of his property and the cash in payment (or provisional payment) for it. During that time interest is required to constitute just compensation. And the funds, though physically "deposited" are deemed withdrawn or reduced by the Government accordingly.

This principle has found practical application in several cases by the Second Circuit. In United States v. 15.03 Acres of Land, 2 Cir., 1958, 253 F.2d 698, the Court held the Government liable for additional interest for a 14-day period during which time distribution of funds on deposit was forbidden pursuant to an order obtained on the Government's motion. This case has unusual significance since that Court itself refutes the contention here pressed by the Government that two prior decisions of the Second Circuit, United States v. 53¼ Acres of Land, 2 Cir., 1949, 176 F.2d 255, and United States v. City of New York, 2 Cir., 1951, 186 F.2d 418, compel a different result. Indeed, in the earlier case (176 F.2d 255) the Court had put it this way. "The government may not however retain the benefit of a deposit once made if it in effect withdraws that deposit by its later action in the proceeding. If the government reduces the

---

3. In discussing the peculiar nature of the Government's post-decree attack (Step [7]) on the condemnation judgment (Step [2]), we stated a condemnation action "is patently not the mechanism for the assertion that the Government really *owns* the full beneficial title," 266 F.2d 657, 659. United States v. 93.970 Acres, 1959, 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275, decided subsequent to our opinion is clearly controlling to the contrary.

amount of the deposit or opposes payment on the ground that the withdrawal requested exceeds the value of the property, it becomes liable for interest on the amount by which the deposit is thus reduced." 176 F.2d at page 259. Of that case it said in 1958, "we held no interest will run, because the Government had done all it was required to do by depositing the fund and was under no obligation to 'allocate the deposit and earmark definite amounts for designated claimants'" contending among themselves. "But," the Court went on, "where the Government opposed distribution on the ground that the withdrawal requested exceeded the value of the property, interest was chargeable for the period of delay. See United States v. City of New York, 2 Cir., 186 F.2d 418, 422." 253 F.2d 698, 699. With an acute awareness of those complicated cases growing out of this major condemnation to expand the Brooklyn Naval Yard, the Court announced the principle which we here apply. "The statute * * * provides 'interest shall not be allowed on so much (of the amount finally awarded) as shall have been paid into the Court.' But if the Government 'in effect withdraws the deposit' or 'freezes' it, interest will be allowed. The fact that the statute just quoted refers to a deposit before judgment, whereas here we have a deposit after judgment, does not affect the principle involved. Compare United States v. 3.71 Acres of Land, etc., D.C. E.D.N.Y., 50 F.Supp. 628, with United States v. Hirsch, 2 Cir., 206 F.2d 289, 294–295." 253 F.2d 698, 699.

This was, of course, an echo of that Court's holdings prior to the Brooklyn Navy Yard cases. "The former owner is entitled to withdraw the deposit at any time and if not deprived of that privilege has no right to interest on whatever he elects not to take. If, however, the Government reduces the deposit before it has been withdrawn by the former owner the amount remaining after such deduction is treated as the amount deposited and interest on the deficiency

computed on that basis is allowed. United States v. 1,997.66 Acres of Land, 8 Cir., 1943, 137 F.2d 8. So, too, if the United States opposes the withdrawal by the former owner and the court declines to allow a part to be withdrawn, it has been held that interest may be allowed on that portion withheld. United States v. Certain Lands in St. Louis, Mo., D.C.E.D.Mo., 41 F.Supp. 809." United States v. 0.45 Acres of Land, 2 Cir., 1945, 151 F.2d at pages 115, 116.

The Government had several courses open to it. At Step [7] it could have left the funds free for withdrawal. That would have given it the use of the property and the claimant the use of the money. No interest would have been due. That was subject, however, to the great risk that if the Government's belatedly asserted ownership was ultimately sustained, reimbursement from Bishop would depend on his solvency. The way to protect itself against that real contingency was to keep the money from getting into his hands. That is what Step [8] accomplished. What was transferred to the Registry as a "provisional * * * payment 'on account of' compensation was now turned into a frozen fund. It was not intended or expected that Bishop would or ever could get any part of it. Indeed, the objective, realized in Step [9], was not only to prevent payment of the Registry sums, but compel restitution of the initial deposit (Step [1]) plus rents and profits received for a number of years.

Within the meaning and purpose of the Declaration of Taking Act, what was at the outset a "deposit" ceased to be such during the period the Government successfully prevented its effectual withdrawal by the person who was the owner and whose ownership was thereafter upheld. The judgment is therefore reversed and remanded to the District Court with directions to enter judgment for Bishop for interest during the period from Step [8] to Step [11].

Reversed and remanded with directions.