**UNITED STATES of America,**
**Appellant,**

v.

**Cleveland SMITH, Claimant as to Tract**
**Q-1744, Appellee.**

**No. 18885.**

United States Court of Appeals
Fifth Circuit.

July 11, 1962.

Rehearing Denied Sept. 19, 1962.

**50**

---

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Robert S. Griswold, Jr., Attys., Dept. of Justice, Charles D. Read, Jr., U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., W. B. West, III, Atty., Dept. of Justice, Washington, D. C. (Charles L. Goodson, U. S. Atty., Atlanta, Ga., on the brief), for appellant.

Herbert Edmondson, Jeff C. Wayne, Gainesville, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

The appellant, United States of America, acting through the Secretary of the Army, issued its declaration of taking dated December 21, 1956, and filed its complaint on December 28, 1956 to acquire fee simple title to a number of tracts of land for public use in connection with the establishment of the Buford Dam and Reservoir Project, Georgia. One of these tracts of land was approximately sixty acres taken from a rectangular tract of approximately one hundred acres in Hall and Lumpkin Counties, Georgia, the property of the appellee, Cleveland Smith. The action, known as Civil Action No. 719, was filed at the request of the Secretary of the Army for the taking of appellee's property under appellant's right of eminent domain, and for the ascertainment and award of just compensation to him as its owner.

The complaint asked that an order granting immediate possession of the property be entered vesting fee simple title in appellant, "subject to existing easements for public roads and highways, public utilities, railroads and pipe lines;" and it demanded judgment that the property be condemned, that just compensation for the taking be ascertained and awarded, and that an order granting immediate possession be entered. An exhibit to the complaint estimated the proper compensation for appellee's tract No. Q1744 at $7,600.00. Pursuant to the prayer of the complaint the District Court entered its judgment upon the declaration of taking on January 3, 1957, vesting title to said property in the appellant and the right to just compensation in appellee, the amount thereof to be ascertained, awarded and established by judgment pursuant to law.

A public road entered this one hundred acre tract at its northwest corner and meandered in a southeasterly direction through the tract to a point a little south of the center of its eastern boundary. The purpose of the government was to flood this sixty acres and the roadway traversing it. The substantially forty acres remaining after the taking consisted of three non-contiguous areas of irregular shapes, one in the northeast corner of the one hundred acre tract, of approximately eight acres, one in the southeast corner of approximately four acres, and one of approximately twenty-eight acres, extending down the middle of the tract from the northern border, about two-thirds of the way to the southern border. The two small tracts were left untouched by the existing roadway. A segment of the former road bisected the twenty-eight acre tract somewhere near its center. Appellant's plan was to flood the road upon the land taken for a distance of one thousand or more feet on each side of this peninsula.

Appellant's predetermined plan was carried out with the result that one thousand feet of the road on the east and much more than that on the west of this peninsula, all within the bounds of Smith's one hundred acre tract, were destroyed by overflow. The peninsula, on which were situated appellee's home,

store, grist-mill and a half dozen other structures, was, therefore, left without access to the road which had provided his communication with the outside world.

Appellee filed an answer and a substitute answer, a part of which appellant moved to strike. But both were withdrawn before the motion was passed upon. Thereupon appellant filed a motion to limit the testimony upon the trial,

"so as to exclude any evidence offered to show alleged damages for loss of access and alleged injury to and depreciation in value of the remaining property of the former owner by virtue of loss of access from inundation of public roads and highways and for the closing of same, on the ground and for the reason that such alleged damages and injury, if extant are not compensable in this proceeding, and the United States has discharged its responsibility by payment of the judgment rendered in Civil Action No. 745 in this Court."

The trial court entered an order on the foregoing motion substantially a week after its filing, the important parts of which follow:

"It is a rule that in condemnation of a part of a tract, owned in fee simple, just compensation is the market value of the whole before condemnation, less the market value of the portion which remains after the taking of the part. United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, 175.

"The owner is entitled to receive the difference between the value of the whole, unaffected by the improvement, and the value of the remainder in the light of any special benefits because of the improvement and this involves consideration of damages on the one hand and any special and direct benefits on the other. * * *

"In determining just what effect the taking of the portion has had on the remainder, and in determining the amount of compensation to which the owner is entitled, the jury must ascertain that in the following manner:

"1. The jury will find the market value of the entire tract at the time of the taking, unaffected by the use to which the Government intends to put the property taken.

"2. The jury will then find the fair market value of the portion of the tract retained by the property owner after the taking, and in making this determination the jury will determine this value in the light of the contemplated use, that is, the construction of the dam and reservoir development, and in making this determination the jury will be entitled to consider the effect of the flooding of the highways on the means of access to the owner's remaining property. United States v. Grizzard, 219 U.S. 180, [31 S.Ct. 162, 55 L.Ed. 165]; United States v. 9 Acres of Land, etc., D.C., 100 F.Supp. 378, 379.

"3. The difference will be the amount of just compensation to which the owner is entitled, as this will place him in as good position pecuniarily as he was before the taking.

"The claimant here may not recover, as a separate item, damages resulting from the Government's taking of the public road, and for this reason, the motion of the Government to limit the testimony so as to exclude any evidence to show a separate item of damages for the loss of access is sustained.

"However, in determining the fair market value of the part remaining after the taking, the jury may consider along with the other facts and circumstances the effect, if any, that the loss of access has upon the market value of the remainder."

During the course of the examination of appellee, he was asked by his counsel

if the water covered the road at places on his property which was condemned. Appellant's attorney objected, stating:

"* * * I would like to renew my objection to the introduction of any testimony as to the loss of access by the road, the Hall County section of the road going into Mr. Smith's property, on the grounds that this property was acquired in this civil action subject to existing easements for public roads, among other things. At the time of the taking of Mr. Smith's property the road was still there. And further, although the road was subsequently acquired by the Government in another civil action, that in the Civil Action No. 745, for the Hall County road system, Hall County was compensated for roads that were taken, and it being the burden of the county, not the United States, to furnish access to property owners, that awarding any further damages in this connection, or allowing testimony to go into the record showing diminution in value would, in effect, be subjecting the Government to payment of dual compensation."

The trial judge ruled on the objection thus:

"Now, Mr. Clemmons, the Court recognizes your objection to that matter, and the Court has held, in the ruling on your written objection, your written motion to limit testimony, that the claimant here may not recover as a separate item damage resulting from the Government's taking of the public road, and I have sustained your motion to limit the testimony so as to exclude any evidence to show a separate item of damage for the loss of access; however, the Court is of the opinion that if the flooding of the road to which they refer is the result of the use to which they have put the property

taken here, or if it is the result of the project for which the property was taken, that is the, in the light of the contemplated use, that it will be admissible so far as it can be shown that it affected the market value of the remainder of the property, and for that reason, and to that extent your objections are overruled."

During the same colloquy between court and counsel, it was stated by Government counsel that the flooding of the road on the property here condemned was a part of the development for which the property was taken, that is, a "part of the originally contemplated project for the construction of the Buford Dam and Reservoir project."

The charge to the jury contained in the record is in substantially the same words as those quoted supra from the order on the appellant's motion to limit the scope of the testimony concerning the flooding of the roads. No exception was taken by appellant to the court's charge.

Appellee gave as his opinion that the difference in valuation of his property before and after the taking and the flooding of the roads on his land was $38,500.00; his witness Hoke Smith placed the difference at $37,500.00; his witness Burkholder at $49,100.00; and his witness Parks at $38,000.00. The Government used two witnesses, one of whom estimated the difference at $7,600.00, and the other at $19,500.00.[1]

The jury returned a verdict for $30,700.00 and the court, after deducting the $7,600.00 deposited in court by appellant as estimated compensation, entered judgment for $23,100.00 from which, motion for new trial having been denied, this appeal is taken.

Part II of the record before us consists of excerpts from Civil Action No. 745, United States of America, Plaintiff v. Certain Roads in Hall County, Georgia,

---

1. He first testified that the value before the taking was $25,000.00 and after taking, $9,000.00; later, he changed the $9,000.00 to $2,000.00, and this figure represents an average of the two.

and Hall County, Georgia, et al.[2] From this part of the record it appears that, based upon the determination and request of the Secretary of the Army, complaint was filed July 16, 1957 in Civil Action No. 745 against Hall County et al. to condemn "all outstanding right, title and interest in the roads described in Exhibit 'A'." The exhibit contained the descriptions of a large number of parcels of land comprising various segments of the Hall County road system, two of which, parcels 80 and 81, traverse the 100 acre tract of appellee Cleveland Smith. Hall County answered the complaint, stating that it would be required to provide forty-three miles of replacement roads and road facilities as the direct result of the inundation of the part of its public road systems taken in the complaint and prayed judgment against appellant in the sum of $3,271,314. Excerpts from the evidence taken in that trial, and of the charge given to the jury, appear in the printed record. (In addition, the original transcript of all the testimony is filed in this court.) July 17, 1957, judgment for immediate possession was entered by agreement between the United States and Hall County and on June 25, 1958 judgment was entered awarding damages, according to the jury's verdict, in the sum of $1,750,-000.00 in favor of Hall County. The verdict was based upon the finding that this was the value of the substitute facilities which Hall County would have to provide by reason of the flooding of the roads of the county.

Appealing from the judgment awarding the appellee just compensation for the taking of a portion of his one hundred acre tract of land and for damaging that which remained, appellant specifies only one error of the court below: "The Court below erred in admitting evidence of loss of value to Smith's property as a result of the inundation of his access road." It assigns two bases of argument in support of the error relied upon:

"1. The award amounts to double recovery because authorities responsible for the maintenance of the access road have been compensated for its taking, measured by the cost of constructing a substitute facility in a prior eminent domain proceeding.

"2. The interests in the road were specifically excluded from the taking in this proceeding, therefore, the Court below lacked jurisdiction (a) to adjudicate the claim against the United States for its taking; and (b) to compel the United States to take an interest beyond the scope of the complaint and declaration of taking."

Before considering the detailed argument advanced by the appellant in support of these propositions of law, it is desirable to emphasize what the court below submitted to the jury as the basis for its award to the appellee. By its charge to the jury, which was not objected to, and by its ruling on the evidence, the court made it plain that the sole question submitted to the jury was the difference between the fair market value of the one hundred acre tract at the time of the taking and the fair market value of the forty acres remaining, cut up as it was into three separate segments and damaged as it was by the flooding of the roadway on Smith's one hundred acre tract. The appellant does not question that the constitutional phrase 'just compensation' means a full and perfect equivalent for the property taken, that just compensation rests on equitable principles and means substan-

2. This part of the record, occupying about 33 pages of the printed record, is not certified by the clerk, does not show that it was offered in evidence or otherwise made an exhibit to the proceedings in the action before us, and is not accompanied by any stipulation of the parties under which it constitutes a part of the record on appeal. However, no action has been taken by appellee to have it excluded from the record; no point is made in appellee's brief that it is not entitled to consideration; and both parties argue the case as if it is properly before this Court. We therefore so treat it.

tially that the owner should be put in as good position as he would have been if his property had not been taken, or as nearly so as is possible under the given circumstances.

Nor does it argue that appellee should not be awarded an amount sufficient to cover the value of the land taken and the depreciation in value of the land remaining, which is brought about by what the sovereign has done on the whole tract. It is not contended by appellee, and the court nowhere intimated, that Smith was entitled to recover damages for the taking of the county's easement of way constituting the public road. By the terms of the declaration of taking and of the complaint, and under all of the rulings of the trial court, it was made plain that Hall County owned an easement of way for public locomotion represented by the road, and that appellee had and claimed no title to that easement.

But appellee did have title to the lands taken from him in the condemnation proceeding and did have the right to recover damages to his remaining lands proximately resulting from the use to which the Government put the land which it had taken. It was undisputed that the three separate parcels left to appellee were separated by water and that there was no access remaining from one parcel to another or with other lands; and that no substitute facility had been installed by the county or that any was in contemplation, or was included in the maps exhibited in the Hall County suit.

The rulings of the court below are, in our opinion, directly supported by two decisions of the Supreme Court of the United States, United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, and United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165. Applying the general rule that "just compensation consists not only in an award of the value of the lands which are taken, but also of any damage that may result to the portion of the tract which remains, on account of such taking and on ac-

count of the uses to which the land taken may, or probably will, be put * * * ",[3] the court, in each of those cases, approved the award of damages arising from the flooding of existing access roads.

In Welch, the land taken consisted of a strip of about three acres of land lying along a creek and running east and west. Welch owned other lands south of and adjoining the strip taken and had a private right of way to a county road, which ran at right angles to the creek and northerly across land of other parties. The taking of the intervening strip cut off the use of this private right of way, and the trial judge found that the value of Welch's farm was thereby lessened to the extent of $1,700.00, which he allowed in addition to $300.00 for the land taken. Affirming the action of the trial court, the Supreme Court, speaking through Mr. Justice Holmes, said this (page 339 of 217 U.S., page 527 of 30 S.Ct.): "A private right of way *is an easement and is land.* We perceive no reason why it should not be held to be acquired by the United States as incident to the fee for which it admits that it must pay. * * * The same reasoning that allows a recovery for the taking of land by permanent occupation allows it for a right of way taken in the same manner, and the value of the easement cannot be ascertained without reference to the dominant estate to which it was attached. * * * " [Emphasis supplied.] This case has been cited without question in sixty cases, twenty-one of which were by the Supreme Court.

The same rule was announced in Grizzard. The United States had, in the erection of a series of locks and dams, backed a creek up so as to flood seven and one-half acres of Grizzard's farm. The trial judge found that the whole farm had been worth $3,000 before the taking, and that what was left after the taking was worth $1,500. He divided this damage by allowing "seven hundred fifty dollars for the land taken, and a

3. Sharp v. United States, 191 U.S. 341, 351–352, 24 S.Ct. 114, 48 L.Ed. 211.

like sum of seven hundred fifty dollars for the easement of access taken." We quote a portion of the Supreme Court's opinion approving the award: [4]

"* * * Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted. * * *

"The constitutional limitation upon the power of eminent domain possessed by the United States is that 'private property shall not be taken for public use without just compensation.' The 'just compensation' thus guaranteed obviously requires that the recompense to the owner for the loss caused to him by the taking of a part of a parcel, or single tract of land shall be measured by the loss resulting to him from the appropriation. *If, as the court below found, the flooding and taking of a part of the plaintiffs' farm has depreciated the usefulness and value of the remainder the owner is not justly compensated by paying for only that actually appropriated, and leaving him uncompensated for the depreciation over benefits to that which remains.* * * *

" 'When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account. * * *'

"That the trial judge found the damages for the land and for the easement of access separately is not controlling. The determining factor was that the value of that part of the Grizzard farm not taken was fifteen hundred dollars, when the value of the entire place before the taking was three thousand dollars. A judgment for a less sum will not be that 'just compensation' to which the defendants are entitled. The case is not different in legal consequence from what it would have been if a railway had been constructed across one's lawn, cutting the owner off from his road and outbuildings, etc. To say that such an owner would be compensated by paying him only for the narrow strip actually appropriated, and leaving out of consideration the depreciation to the remaining land by the manner in which the part was taken, and the use to which it was put, would be a travesty upon justice." [5] [Emphasis supplied.]

These authorities are, in our opinion, applicable to and determinative of this phase of the question before us. And a brief recapitulation of the facts at this point, chronologically arranged, is desirable before entering upon a detailed discussion of the charge of error asserted by appellant.

On, and for forty-five years before, December 21, 1956, Cleveland Smith was, and has been, in exclusive possession, under fee simple title, of a one hundred acre tract of land. That title was subject only to the easement of way belonging to Hall County, to the surface of a strip of land extending across the tract which it held for the purposes of use as a road by the public. Smith had an absolute right of access to that strip of land as the owner of the fee and an abutting property owner, in addition to his right to its use as a member of the public.

July 24, 1946,[6] Congress approved an Act authorizing the construction of the Buford Dam and Reservoir project; and July 2, 1956,[7] it appropriated funds for

---

**4.** 219 U.S. pp. 183–186, 31 S.Ct. pp. 163–164.

**5.** And cf. 18 Am.Jur., Eminent Domain, §§ 181–185 and 285.

**6.** Public Law 525, 79th Congress, 60 Stat. 634.

**7.** Public Law 641, 84th Congress, 70 Stat. 474.

the execution of the project. All actions performed by appellant as herein described were based upon plans fully developed and adopted before December 21, 1956.

Before taking possession of the road or any part of Smith's land and in execution of its completed plans for the project, the United States, acting through the Secretary of the Army, issued its declaration of taking *inter alia* of all of Smith's one hundred acre tract except about forty acres "subject to existing easements for public roads * *." This declaration of taking was made the basis of a complaint in Civil Action No. 719 in the court below filed December 28, 1956 under authority of Rule 71A, Federal Rules of Civil Procedure, 28 U.S.C. The estimated compensation for Smith's lands was stated to be $7,600.00. Hall County was not named or served as a party defendant in this civil action. In said complaint, it was stated: "the right to just compensation therefor vested in the persons entitled thereto upon the filing of said declaration of taking and making of said deposit; and the amount of compensation therefor shall be ascertained and awarded in this proceeding and established by judgment herein pursuant to law * * *."

A "Judgment on the Declaration of Taking" was entered by the court below January 3, 1957, reciting: "The following estates in the property, fully described in Schedule 'A' hereto attached and made a part hereof, vested in the United States of America upon the filing of said declaration of taking and depositing into the registry to be just compensation * * * on the 28th day of December, 1956." Civil Action No. 719 remained dormant on the docket of the court below for more than three years when, on July 7, 1960, the motion to limit testimony quoted supra was filed, followed by the order on the motion, the verdict of the jury and the judgment appealed from, dated July 18, 1960, all as described supra.

Meanwhile, something over six months after Cleveland Smith's land had been taken by the judgment mentioned, the appellant filed July 16, 1957 a complaint against Hall County to condemn "all outstanding right, title and interest in the roads described in Exhibit 'A'" in which it was averred that "Hall County, Georgia, has, or might claim an interest in said property, and is made a party defendant." The following day, July 17, 1957, the District Court entered a consent order vesting immediate possession in the United States. Nearly a year later, a jury returned a verdict in favor of Hall County adjudging that "The cost of adequate substitute facilities, if any are necessary, is the sum of $1,750,-000.00," upon which judgment was entered by the court below on June 28, 1958.

As shown above, in attacking the judgment of the court below in favor of appellee, the appellant assigns only one error, that the court "erred in admitting evidence of loss to Smith's property as the result of the inundation of his access road."

█ In developing its argument in support of this specified error, the appellant first takes the position that, since Hall County recovered full compensation for the taking of appellee's access to the road, he is barred by *res judicata* from claiming additional compensation. Nothing in the pleadings [8] nor the specification of error invoked the principle of *res judicata,* and we find no basis for it. Hall County was the sole named defendant in the condemnation case against it, being Civil Action No. 745. Appellee was not a party to that action, and Hall County was not a party to the condemnation case against Smith, et al., Civil Action No. 719. As far as appellee is concerned, the condemnation action against the county was entirely *res inter alios acta.* It is clear, moreover, that the two condemnation proceedings involved different estates in appellee's lands. On the face of every pleading it was made clear that,

8. Cf. Rule 8(c), F.R.Civ.P.

in the condemnation proceeding against appellee, the easement of way to the road was excepted; and, in the condemnation case against the county, it was clear that nothing was involved except the outstanding right, title and interest in the roads, which the complaint averred that Hall County had or might claim. We think the point is without merit.

Nor do we find basis for appellant's claim that Hall County recovered full compensation for the taking of Smith's access, under established principles of condemnation law. The authorities upon which appellant relies do not, in our opinion, support its position.[9] If these authorities were apposite, practically all of them would be superseded by Rule 71A F.R.Civ.P., which became effective August 1, 1951.

The appellant repeats the argument several times that Hall County has received a windfall under the guise of just compensation, and that the duty lay solely upon the county to furnish a substitute road for the one to which all portions of appellee's land had enjoyed ready access. The fact is that there is no showing whatever that any substitute facility has ever been furnished by Hall County, or that it has the funds with which to do so; and as far as the evidence in this record goes, appellee, with his home, his store, grist mill and other buildings, and his three widely separated peninsulas of land, is still without means of access of any kind.

Appellant's entire argument overlooks the principles established by Grizzard, Welch and other authorities supra that the right of access to existing roads constitutes land and is compensable right, certainly when limited to access to the roads situated on the tract, a part of which is taken and flooded.[10]

■ The short answer to the repeated argument of appellant that the government should not be required to pay twice for the destruction of Cleveland Smith's access to the road and that Smith's claim is against Hall County and not against the United States, is that appellant had full opportunity, which it failed to use, to litigate these questions in a proceeding in which this appellee and Hall County were joined. It was master of this entire litigation in all of its aspects, and chose its own time table and parties. Rule 71A, F.R.Civ.P. was the result of long study and many revisions before it was adopted. It simplified the complicated procedures by which the United States is empowered to obtain land by condemnation. It made all of the Rules of Civil Procedure applicable to the condemnation of property under the power

9. Woodville v. United States, 10 Cir., 1946, 152 F.2d 735, certiorari denied, 328 U.S. 842, 66 S.Ct. 1021, 90 L.Ed. 1617; State of Texas v. Harris County Houston Ship C. N. Dist., 5 Cir., 1945, 158 F.2d 861; Mayor and Council of City of Baltimore v. United States, 4 Cir., 1945, 147 F.2d 786; State of California v. United States, 9 Cir., 1946, 153 F.2d 558; State of California v. United States, 9 Cir., 1948, 169 F.2d 914; Brown v. United States, 1923, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; City of Fort Worth v. United States, 5 Cir., 1951, 188 F.2d 217; same case 1954, 212 F.2d 474, are typical cases.

10. See, e. g., United States v. Miller, et al., 317 U.S. 369, 375–376, 63 S.Ct. 276, 87 L.Ed. 336:
"Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings. One of these is that a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it.
"This has begottten subsidiary rules. If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage. On the other hand, if the taking has in fact benefited the remainder, the benefit may be set off against the value of the land taken."
Another case holding that "When the Government takes part of a tract of land by flooding, it must pay for the damage caused by resulting erosion to the remainder of the tract" is in point—United States v. Dickinson, 331 U.S. 745, 748–751, 67 S.Ct. 1382, 91 L.Ed. 1789.

of eminent domain, except as otherwise provided in Rule 71A. Under Rules 2, 13, 18, 19 and 22, appellant could have brought its action against Cleveland Smith and Hall County and could have included in the one action the entire estate in the desired part of the one hundred acres involved, combining its claim against the county's ownership of an easement for road purposes with Smith's ownership of the remainder of the fee. In such an action, appellee and Hall County would have been placed in a position to litigate whatever claims they desired to assert against each other, and both would have been compelled to include any claim it might have had against the appellant. United States v. 93.970 Acres of Land, et al., 1959, 360 U.S. 328, 329–330, 79 S.Ct. 1193, 3 L.Ed.2d 1275; United States v. Merchants Matrix Cut Syndicate, Inc., et al., and companion cases, 7 Cir., 1955, 219 F.2d 90, certiorari denied 349 U.S. 945, 75 S.Ct. 873, 99 L. Ed. 1271; 7 Moore's Federal Procedure, pp. 2701, et seq. and 2766; and cf. Bishop, et al. v. United States, 5 Cir., 1961, 288 F.2d 525.

A brief quotation from the case first mentioned will suffice to illustrate the general rules applicable in condemnation proceedings under Rule 71A:

> "The basic question presented in this case is whether the United States can have adjudicated under one complaint (1) the claim by a third person of a valuable possessory interest in government property and (2) condemnation and value of that interest, if any. * * * [360 U.S. p. 329, 79 S.Ct. p. 1194.]

> "It follows necessarily from this that application of the doctrine of 'election of remedies' would put the Government in an impossible situation. For under the doctrine, the Government must choose either to abandon its power to revoke the lease or to give up its right to immediate possession under comdemnation law, * * *. We see no reason either in justice or authority why such a Hobson's choice should

be imposed and why the Government should be forced to pay for property which it rightfully owns merely because it attempted to avoid delays which the applicable laws seek to prevent. Such a strict rule against combining different causes of action would certainly be out of harmony with modern legislation and rules designed to make trials as efficient, expeditious and inexpensive as fairness will permit." [p. 332, 79 S.Ct. p. 1195.]

Finally, we deal briefly with appellant's contention, adverted to in the brief and stressed in the oral argument, that, if appellee has any claim for just compensation against the Government based upon depreciation of value arising from loss of access, such a claim must be pursued under the Tucker Act, 28 U.S.C. §§ 1346(a) and 1491. We think this contention is wholly invalid. The appellant knew before taking the first step in the proceeding against appellee that the easement of way for the road across appellee's one hundred acres belonged to Hall County and that whatever rights the county possessed would have to be condemned. As shown above, it had an easy way by which it could acquire the land of Smith and the easement belonging to the county in a single action and thereby settle all questions with all parties in interest. By adopting the expedient of separating the two claims of separate interests in the same land into two separate civil actions, the appellant could not change the essential character of what was being done and could not destroy appellee's claim to full and just compensation.

Moreover, there is nothing in the record before us which would justify an action under the Tucker Act. Everything the appellant acquired from Smith and from the Government it acquired by court orders in condemnation proceedings authorized by Federal Statutes and Rule 71A. The two separate actions added together vested in the Government, by judgments of the District Court, the entire estate in desired portions of

the one hundred acre tract. Nothing was taken by the appellant, and nothing was left to be taken, by mere physical seizure. Every case suggested as supporting the appellant's view has been a case where the land of a person had been taken by physical seizure alone, leaving the owner no alternative but to proceed against the Government under the statutes commonly referred to as the Tucker Act. Certainly that is not the case here. In McCrory Holding Company, supra, (294 F.2d at 816), we quoted from the recent Supreme Court case of Dow v. United States, 357 U.S. 17 at pp. 21, 22, 78 S.Ct. 1039, at p. 1044, 2 L.Ed.2d 1109:

> "Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act, 28 U.S.C. §§ 1346(a) (2) and 1491, to recover just compensation. See Hurley v. Kincaid, 285 U.S. 95, 104 [52 S. Ct. 267, 76 L.Ed. 637]. Under the second procedure, the Government may either employ statutes which require it to pay over the judicially determined compensation * * * or proceed under other statutes which enable it to take immediate possession upon order of court before the amount of just compensation has been ascertained." [11]

Finding no error in the challenged actions of the court below, its judgment is

Affirmed.

JOHN R. BROWN, Circuit Judge (concurring specially).

I concur fully in the decision and opinion, but I would emphasize some matters.

Smith owned his land. That ownership included access to it by the road network. The taking did several things. It took the 60 acres, leaving the peninsula. The taking of the 60 acres leaving this peninsula was the first of a planned and inevitable multi-step acquisition which contemplated that the 60 acres was to be substantially inundated. The taking in this fashion therefore contemplated that while a roadway would still run across the 28-acre tract, it was now useless as it led only from water to water. That was known at the time the formal declaration of taking was filed. And, of course, all this had become a *fait accompli* when Smith's case was heard.

It is true, as Chief Judge TUTTLE points out, that we held in United States v. Brondum, 5 Cir., 1959, 272 F.2d 642, that a Court cannot compel the Government to take (and thus pay for) an estate not described. But this case certainly does not support the proposition that the Government, knowing that it will, and will have to, effectually destroy an existing valuable right in land, may escape the obligation to pay for it in that multi-step proceeding by a cunning, crafty drafting of a declaration which ostensibly excludes it. In Brondum the District Court sustained the landowner's contention that the declaration took an avigation easement. The Government contended, and we agreed, that there was a distinction between the rights enjoyable under an avigation easement as distinguished from a clearance or obstruction easement. The Government simply did not want an avigation easement. Construing the declaration we simply held that the Government could take the lesser without claiming (or having) the present right to enjoy the greater. Additionally, on the basis of the record as it then existed, it was entirely conceivable that in the proposed use of the limited right acquired, the flight of airplanes never would amount to an invasion, or taking, of the right to fly over the property. Here, however, the formal

11. And see also United States v. Dickinson, 331 U.S. 745, 748–749, 67 S.Ct. 1382, 91 L.Ed. 1789.

exclusion of " * * * existing easements for public roads * * * " was, and was known to be, of paper value only. Use of such terminology might be helpful in an effort to keep things neat and orderly. But the attempted formal exclusion could not make the taking or the undisputed intended taking anything less than everything which Smith had. What he had, of course, was highway access to the land forming the peninsula. That was, and was intended to be, lost once the Government commenced this multi-step but single comprehensive condemnation.

The Government may not, therefore, destroy this right without paying for it. It may not escape paying for it in the pending proceeding by insisting that the citizen undertake the formidable effort of a suit in a strange Court far from his home which, even under its recently amended Rules, operates under a highly technical procedure in the course of processing cases before a Commissioner for ultimate determination by the Court without a jury. See 28 U.S.C.A. § 2503; Amended Rules, 1957, Court of Claims, 28 U.S.C.A. 1961 Pocket Part.

We are committed to the proposition that statutes relating to governmental acquisition of property inevitably carry constitutional overtones and must be construed in such light. Bishop v. United States, 5 Cir., 1961, 288 F.2d 525, 527–528.

It would be surprising—if not downright frightening—to say that by the declaration of taking Act Congress meant to put within the hands of the Department of Justice the power to chop up a single acquisition into little paper bits, and thereby either obtain property without Fifth Amendment just compensation or subject the citizen to two or more trials in two or more courts in two or more places.

Our decision achieves justice by fulfilling the historical imperatives of the Fifth Amendment. Congress could have meant no less.

TUTTLE, Chief Judge (dissenting).

With all deference I feel that the importance of the legal principles involved in light of the many land condemnation cases now pending in the Courts of this Circuit, make it necessary to make my views known in a short dissenting opinion.

I think the trial court erred in permitting the jury to consider, in finding the market value of the twenty-eight acres of land left to Smith, what effect, if any, the loss of access had upon the market value of the remainder. This is true I think because the loss of access from this twenty-eight acre tract, which included Smith's home and store, was not caused by any condemnation proceedings then before the Court for trial. This was due to the fact that the Government expressly excluded from its declaration of taking the "existing easements for public roads."

It seems to me, with all deference, that the majority holds here that the Government could not legally condemn Smith's property without including in the condemnation proceeding his right of easement in the public highways by which he had access to town. This Court has held in United States v. Brondum, 5 Cir., 272 F.2d 642, that:

"In a condemnation proceeding courts cannot compel the United States to take and pay for an estate not described in the declaration of taking." 272 F.2d 642, 647.

Here, of course, the United States did not seek to deprive Smith of his right of access without compensation. It considered the right which Smith had to the use of the county roads, including that traversing his land, as one that he held in common with the other property owners on the road net. Rightly or wrongly, the Government thought that it could compensate Smith, together with all of the other property owners having the right of user in the county roads by condemning the county's right to the road and compensating it in the amount necessary to construct a substitute road net.

It proceeded on the principle announced in Jefferson County, Tenn. v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, where, on page 565, the Court of Appeals for the Sixth Circuit said:

"The State or its political subdivision, holds, as a trustee, title to the easement for public highways and roads. A quasi corporation such as a city or county, holds such property by delegation of the general sovereign power, the authority for its acquisition and control being governmental and the interest exclusively that of the public."

Thus, in a number of cases it has been held that a county or a city, as the case may be, has a Fifth Amendment right to be compensated for the taking by the United States of its public roads. See Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360, and City of Fort Worth, Tex. v. United States, 5 Cir., 188 F.2d 217.

The Government contends here that its acquisition of Hall County's interest in its road net destroyed by the entire condemnation of the entire lake area and its payment of $1,750,000, as fixed by the jury as necessary to enable Hall County to construct a substitute road net, fully compensated Cleveland Smith for his loss of access. I think a strong case can be made out to support this contention. However, it seems to me that we do not reach this question in this litigation. The taking of the sixty acres in his condemnation proceeding did not destroy the right of access from Smith's twenty-eight acres remaining. The road still ran across this particular tract of land. The trouble is that it led nowhere. The fact that it led nowhere resulted from the Government's flooding the road when it flooded the land which it here condemned. However, since it expressly excluded Smith's easement in the road net from the condemnation proceeding, Smith's loss of access cannot be considered in determining Smith's damages in the condemnation proceeding.

If the Government's theory is not correct, that is that by compensating the county for the substitute road net it has discharged its obligation to the land owners who otherwise had access by virtue of the road net, then Smith still has a course of action against the Government for the destruction of a right which the Government did not seek to take by condemnation proceeding. This right exists under the Fifth Amendment, but it can be vindicated only in the manner authorized by Congress, and that is under the Tucker Act. Unless we are to hold contrary to what we have previously said in the Brondum case, supra, that the Government may be compelled to take all that it is actually going to need in such a procedure as this, then it seems to me that there is no justification for our holding that Smith is entitled to have his compensation for the loss of access considered by the jury in determining the value of his remaining land, since the Government expressly excluded the right of access from its condemnation proceedings. When and if Smith files a suit under the Tucker Act for the loss of access, which the Government did not seek to condemn in this present suit, the Government would then undoubtedly raise the defense that it had adequately compensated Smith and other land owners for their loss of access by the condemnation proceeding against Hall County. Then, for the first time, the Court would have to determine whether that condemnation proceeding, as a result of which the Government paid Hall County what a jury has determined was adequate payment to enable Hall County to build a substitute road net, satisfied the constitutional requirement that Smith be paid adequate compensation for every species of property taken from him.

For the reasons indicated I think the judgment should be reversed and upon submission to the jury that part of the charge permitting it to consider loss of access should be eliminated.