UNITED STATES of America,
Appellant,

v.

45.50 ACRES OF LAND, MORE OR LESS, SITUATE IN HENRY COUNTY, STATE OF MISSOURI, Champ H. Woodward, Mary Jane Woodward, Lloyd A. Woodward and Esther B. Woodward, Appellees.

No. 80–1198.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1980.

Decided Nov. 28, 1980.

James C. Kilbourne, Atty., Dept. of Justice, Washington, D. C., for appellant.

Robert W. Spangler, Harrisonville, Mo., for appellees.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The United States appeals the judgment awarded in a condemnation proceeding for a flowage easement over portions of the Woodwards' farm, contending that the trial court was without jurisdiction to award severance damages for the potential flooding of an access road not located on or adjacent to the Woodwards' property. We agree, and, therefore, we reverse the District Court on this issue.

In connection with the Harry S. Truman Dam and Reservoir project in Missouri, the United States filed a condemnation suit and declaration of taking to acquire a perpetual flowage easement over 45.5 acres of the Woodwards' farm, which consists of about 935 acres. On November 2, 1979, the District Court awarded compensation totalling $27,250. This sum contained two separate components. First, $7,250 was awarded for the direct damages to the 45.5 acres for the potential flooding of the Woodwards' farm property. The Government does not appeal this award. Second, $20,000 was awarded for indirect severance damages for the loss of access to the farm which may result from the potential future flooding of an access road at points not located on or adjacent to the Woodwards' property.

The Woodwards' farm has two access routes to it, in the form of a township gravel road which crosses the property near the center of its east boundary and runs toward the west, exiting near the northwest corner. The lowest elevation on the

gravel road is a point located to the east of the Woodwards' property, about five feet in elevation below the maximum flooding potential of the dam and reservoir project.[1] According to expert projections, this point will be flooded every thirty to fifty to seventy years for a period of between twelve to sixteen days, making access during these periods impossible. The other access route will always be flooded whenever the above point is inundated.

■ The Government argues that the District Court lacked jurisdiction to award compensation for the potential future infrequent flooding of the access road located off the Woodwards' farm and outside of the area named in the condemnation suit. The District Court found that "[t]he property taken here for which compensation is payable is not just the land to which access is cut off but the private property right of the condemnee in the public road since the only access to his land is over this route." While we agree with the District Court that the taking of such an interest may perhaps be compensable, we hold that "the award may not be made in a condemnation suit under the theory of damages to the remainder." *United States v. 3,317.39 Acres of Land, More or Less, in Jefferson County, Arkansas,* 443 F.2d 104, 106 (8th Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972). Any action the Woodwards may have for the potential future flooding of the access road will have to be filed in a separate proceeding under the Tucker Act in the Court of Claims. *Id.; see* 28 U.S.C. § 1491 (Supp. II 1978); *United States v. Welch,* 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787 (1910); *United States v. Winnebago Tribe of Nebraska,* 542 F.2d 1002, 1007 (8th Cir. 1976); *Cravens v. United States,* 163 F.Supp. 309, 316 (W.D.Ark. 1958); *cf. Schiefelbein v. United States,* 124 F.2d 945, 948 (8th Cir. 1942) (action brought

1. The normal level of the reservoir pool will be maintained at 706 feet. That portion of the reservoir pool above 706 feet and below 739.6 feet in elevation is designated as the "Flood Storage Pool or Zone." The United States is acquiring flowage easements over affected property up to 742 feet in elevation to allow for the possibility that water may reach the 741–or 742–foot elevation as a result of wind and wave action when the reservoir is near full flood pool.

in eminent domain proceeding wherein access road is included in description).

■ The nature and extent of the property interest to be acquired by the Government in a condemnation proceeding is, for the most part, discretionary with the federal officials bringing the action, and the interest taken is limited by the condemnation complaint. *See United States v. 3,317.- 39 Acres of Land, supra,* 443 F.2d at 105–06. Since the United States, as sovereign, is immune from suit, the jurisdiction of this court is limited to the terms upon which the sovereign has consented to be sued. *Id.* at 106; *see United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The Supreme Court, however, has allowed "severance damages" to be included in federal condemnation actions. "If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract." *United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943) (footnote omitted); *see Bauman v. Ross,* 167 U.S. 548, 574, 17 S.Ct. 966, 976, 42 L.Ed. 270 (1897); *United States v. 3,317.39 Acres of Land, supra,* 443 F.2d at 105.

■ In this case the Woodwards argue that they "ha[ve] only one damage claim which arises out of the flowage easement which crosses the access road and continues to and upon his property * * *." Appellees' brief at 14. We disagree. In *United States v. 3,317.39 Acres of Land, supra,* 443 F.2d at 105, the court found that the District Court did not have jurisdiction "to permit the landowners to introduce evidence relating to alleged flooding beyond the area described in the complaint and declaration of taking," as it has the effect of increasing the declaration of taking or permitting a counterclaim in a condemnation suit, which may not be done. Woodward attempts to distinguish the latter case by arguing that the potential taking of the access road was not a separate and distinct item of compensation. Woodward maintains that the right of access to existing roads constitutes an interest in the land itself.

We disagree and find that two separate takings are involved. In *Schiefelbein v. United States, supra,* 124 F.2d at 947, this court said:

> The property taken and for which compensation is payable is not the land to which access is cut off but the private property of the condemnee in the public highway. * * * It was made clear in *United States v. Welch* [217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910)] that the property for which compensation is payable is that actually taken, i. e., the right–of–way, and not that served by the right–of–way, although, said the Supreme Court, "the value of the easement cannot be ascertained without reference to the dominant estate to which it was attached." [*Id.* at 334]

Thus the potential taking of the right of access to the Woodwards' farm, if flooding were to occur, is a separate and distinct invasion of a property interest, namely the "right–of–way," from that of the land "served by the right–of–way." [2] Accord-

2. We do recognize the substantial hardship that may result from requiring two separate legal proceedings in order that a landowner may be fully compensated. *See United States v. Smith,* 307 F.2d 49, 60 (5th Cir. 1962) (Brown, J., concurring specially). The fifth amendment, however, while guaranteeing that compensation be just, "does not guarantee that it be meted out in a way more convenient to the landowner than to the sovereign." *United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Parish, State of Louisiana,* 616 F.2d 762, 772 (5th Cir. 1980) (Wisdom, J.). *See also id.* at 771. (*United States v. Smith, supra,* does not stand for the proposition that a landowner may be compensated in the condemnation action for the use of land not condemned.)

We also note that although intermittent but frequent flooding, or inevitable recurrent flooding, of an area may be compensable under condemnation proceedings, flooding that occurs only infrequently or is reasonably expected to occur at intervals of once every fifteen years has been found to lack the future prospect of intermittent and frequent flooding sufficient to constitute a taking. *Fromme v. United States,* 412 F.2d 1192, 1197 (Ct.Cl.1969). Here the evidence was that the flooding of the access road to the east had not yet occurred and is

ingly, the District Court was without jurisdiction to award damages for the potential loss of access from the possible future flooding of the access road not located on or adjacent to the Woodwards' property.

Reversed as to the $20,000 damages for the potential infrequent flooding of the non–adjacent access road. Costs assessed against appellees.

reasonably expected to occur only once every 35.7 to 50 years for less than sixteen days. Moreover, this section of the road would be flooded to a depth of one foot only once every 70 years for twelve days. Thus this case may lack the necessary future prospect of intermittent and frequent flooding.