UNITED STATES *v.* 93.970 ACRES OF LAND ET AL.

No. 573.   Argued May 21, 1959.—
Decided June 22, 1959.

*Ralph S. Spritzer* argued the cause for the United States.   On the brief were *Solicitor General Rankin,*

*Assistant Attorney General Morton, Roger P. Marquis* and *S. Billingsley Hill.*

*Leonard R. Hartenfeld* argued the cause for respondent. With him on the brief was *J. Herzl Segal.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The basic question presented in this case is whether the United States can have adjudicated under one complaint (1) the claim by a third person of a valuable possessory interest in government property and (2) condemnation and value of that interest, if any. In 1947 the United States leased an airfield to respondent Illinois Aircraft Services & Sales Co. The preamble to the lease stated that because of the strategic value of the field the Government considered it essential to retain it "in a stand-by status for post-war use in connection with Naval Aviation activities . . . ." [1] One paragraph of the lease provided:

> "It is understood and agreed that this lease will at all times be revocable at will by the Government upon presentation of notice of cancellation to the Lessee, in writing, sixty (60) days prior to such termination, . . . in event of a national emergency and a decision by the Secretary of the Navy that such revocation is essential."

---

[1] The preamble reads:

"Whereas, because of its strategic value, it is considered essential that the said airfield and the facilities thereon, comprising the said United States Naval Outlying Airfield, be retained in a stand-by status for post-war use in connection with Naval Aviation activities; and

"Whereas, the use of the airfield and facilities by the Lessee . . . will in no wise be detrimental to the present activities of the Navy Department, but is on the contrary deemed to be in the best interest of the Government."

In 1954 the Army wanted to use the property for an aerial defense missile (NIKE) site. Timely notice of revocation was delivered to respondent under the signatures of the Secretaries of the Army and Navy, stating that a national emergency declared by the President in 1950 was still in effect and that both Secretaries deemed revocation of the lease essential. Respondent declined to leave the land, claiming that the Government had gone beyond the authority granted by the lease in attempting to revoke it for use by the Army rather than in connection with Naval Aviation activities mentioned in the preamble to the lease.

In order to obtain possession and use of the land as soon as possible—and without waiting to try out the validity of the prior revocation in a separate action or actions—the Government filed a complaint to condemn whatever possessory interest respondent might be adjudicated to have. Although the Government's complaint alleged that it had revoked the lease and, in effect, that respondent had no compensable interest in the property taken, the District Court ruled that by suing for condemnation the United States had "elected" to abandon its prior revocation. On this basis the court found that respondent had a compensable interest and let a jury determine its value. Under instructions that the lease was revocable only if needed for "aviation purposes" and that a NIKE site was not such a purpose, the jury returned a $25,000 verdict for respondents. On appeal the United States Court of Appeals for the Seventh Circuit affirmed this verdict by a divided court. 258 F. 2d 17. It held (1) that the doctrine of "election of remedies" applied and barred consideration of the revocation whether state or federal law governed and (2) that the lease could only be validly revoked under its terms if the Government planned to use the land for "aviation purposes." To review the

severe restrictions the court's holding places on the ability of the United States to get, quickly, land it may need for government purposes, we granted certiorari. 358 U. S. 945.[2]

We cannot agree that the lease permitted revocation only if the Government wanted the land for "aviation purposes." It is true that the preamble to the agreement states that the airfield was leased, rather than sold, because it was needed in stand-by status for naval aviation activities. It is also true that immediately following the preamble there is a statement, common in many contracts, that "Now Therefore, in consideration of the foregoing, and of the covenants hereinafter mentioned, the Government" leases the airport. There is no indication, however, either in the lease itself or as far as we have been shown in the history of the agreement, that this preamble and the formal legal statement immediately following it meant to limit the express and unequivocal clause of the lease allowing revocation at the will of the Secretary of the Navy in the event of a national emergency. Instead the preamble can be easily understood, in view of the Surplus Property Act of 1944, which required all *surplus* property to be disposed of, as a mere statement of why the property was not considered surplus.[3] In addition the statute which authorized the airport lease provided that such leases shall be revocable "at any time, unless the Secretary shall determine that the omission of such provision from the lease will promote the national defense or will be in the public interest. In

---

[2] The decision of the court below is also in apparent conflict with *United States* v. *San Geronimo Dev. Co.*, 154 F. 2d 78 (C. A. 1st Cir.), and *United States* v. *Turner*, 175 F. 2d 644 (C. A. 5th Cir.).

[3] 58 Stat. 767–770, 777, as amended, 50 U. S. C. App. (1946 ed.) §§ 1612 (e), 1613, 1620, 1632.

any event each such lease shall be revocable by the Secretary . . . during a national emergency declared by the President." [4] Under the circumstances, we cannot and will not assume that an explicit revocation clause in the lease means any less than it seems to mean. We therefore hold that the revocation was valid and effective.

It follows necessarily from this that application of the doctrine of "election of remedies" would put the Government in an impossible situation. For under the doctrine, the Government must choose either to abandon its power to revoke the lease or to give up its right to immediate possession under condemnation law, a right which is not here questioned. We see no reason either in justice or authority why such a Hobson's choice should be imposed and why the Government should be forced to pay for property which it rightfully owns merely because it attempted to avoid delays which the applicable laws seek to prevent. Such a strict rule against combining different causes of action would certainly be out of harmony with modern legislation and rules designed to make trials as efficient, expeditious and inexpensive as fairness will permit. [5]

Respondents argue, however, that election of remedies is part of the law of Illinois and that Illinois law applies here. We cannot agree with this view. Condemnation involves essential governmental functions. See *Kohl* v. *United States,* 91 U. S. 367. We have often held that where essential interests of the Federal Government

---

[4] 61 Stat. 774, 34 U. S. C. § 522a. The current version of this statute is found in 10 U. S. C. (Supp. V) § 2667. We assume without deciding that this statute is applicable although an argument can be made for the applicability of a prior statute. That law provided that leases must be "revocable at any time." 39 Stat. 559, 34 U. S. C. (1946 ed.) § 522.

[5] Cf. *Conley* v. *Gibson,* 355 U. S. 41, 48. See also Fed. Rules Civ. Proc., 1, 2, 18.

are concerned, federal law rules unless Congress chooses to make state laws applicable.[6] It is apparent that no such choice has been made here.[7]

The judgment of the Court of Appeals is

*Reversed.*

---

[6] See, *e. g., Kohl* v. *United States,* 91 U. S. 367, 374; *United States.* v. *Miller,* 317 U. S. 369, 380; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363; *Bank of America Nat. T. & S. Assn.* v. *Parnell,* 352 U. S. 29.

[7] Respondents rely on 26 Stat. 316, as amended, 50 U. S. C. § 171, which provided that condemnation proceedings like the one here involved were "to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." But it is settled that this language required conformity in procedural matters only. See *United States* v. *Miller,* 317 U. S. 369, 379–380 (citing 25 Stat. 94); *Kanakanui* v. *United States,* 244 F. 923; *Nebraska* v. *United States,* 164 F. 2d 866, affirming *United States* v. *19,573.59 Acres of Land,* 70 F. Supp. 610. And insofar as it required such procedural conformity it was clearly repealed by Rule 71A, Federal Rules of Civil Procedure, at the time this suit was brought. It follows that federal law was wholly applicable to this case. In reaching this conclusion we express no opinion on the possible effect on other cases of the re-enactment of this conformity clause in 70A Stat. 148, 10 U. S. C. (Supp. V) § 2663 (a) (1956), or its subsequent repeal, retroactive to the time of re-enactment, by the Act of September 2, 1958. 72 Stat. 1565, 1568.