271 F.2d 379
 UNITED STATES of America, Plaintiff-Appellee-Appellant,
v.
CERTAIN INTERESTS IN PROPERTY IN CHAMPAIGN COUNTY, State of Illinois, Chanute Gardens Corporation and Chanute Apartments Corporation, Defendants-Appellants-Appellees.
 No. 12497.
 No. 12498.
 United States Court of Appeals Seventh Circuit.
 October 21, 1959.
 Rehearing Denied November 24, 1959.
 
 C. M. Raemer, U. S. Atty., Danville, Ill., Perry W. Morton, Asst. Atty. Gen., Robert D. McKnelly, Asst. U. S. Atty., Danville, Ill., Roger P. Marquis, Harold S. Harrison, Attys., Dept. of Justice, Washington, D. C., for the United States.
 Samuel Goldstein, New York City, Joseph M. Williamson, Urbana, Ill., Samuel Goldstein & Sons, M. Robert Goldstein, Arthur D. Goldstein, Michael J. Goldstein, New York City, for defendants-appellants-appellees.
 Before HASTINGS, Chief Judge, and PARKINSON and CASTLE, Circuit Judges.
 HASTINGS, Chief Judge.
 
 
 1
 This action was brought by the United States to condemn defendants' interests in two so-called "Wherry"[1] housing projects located on the Chanute Air Force Base at Rantoul, Illinois, subject to the interests of the mortgagees. The district court awarded $7,100,000 as just compensation. In No. 12497, defendants-appellants appeal from the sufficiency of the amount awarded, asserting errors in the measure of just compensation adopted, in the admission of certain valuation evidence and in conclusions of law. In No. 12498, the plaintiff-appellant appeals from rulings with respect to the interests being acquired, the law applicable to this federal eminent domain proceeding and from other conclusions of law by the district court, all directed, not to the valuation issue, but to the question whether the United States was empowered to condemn defendants' interests subject to outstanding mortgages.[2]
 
 
 2
 There were two housing projects built by Jonathan Woodner Company as sponsor and organizer of defendant corporations. Defendant Chanute Gardens Corporation is the owner of Chanute Gardens (apartments for non-commissioned officers) and Chanute Apartments Corporation is the owner of Chanute Apartments (apartments for commissioned officers). It was stipulated that construction began on February 1, 1951 and was completed in March, 1953, at a cost to the builder of $8,297,969.23, exclusive of builder's and architect's fees, and trial by jury was waived.
 
 
 3
 The land on which the projects were erected (69 acres for Chanute Gardens and 27 acres for Chanute Apartments) was owned by the United States and leased by the Secretary of the Air Force to the defendant corporations for a period of 75 years at a nominal annual rental, "to be used for the purpose of erecting, maintaining and operating a housing project." Among other things, the leases provided that the premises be leased to personnel designated by the Air Force; set out the method of determining rental rates; required the lessees to pay any local taxes levied upon the leaseholds; prohibited any assignment without Air Force consent; specified that the buildings and improvements as erected and completed become "real estate and part of the leased lands, and public buildings of the United States;" and stated that "upon the expiration of this lease, or earlier termination, all improvements made upon the leased premises shall remain the property of the Government without compensation," except as to certain utility facilities.
 
 
 4
 The declaration of taking was filed May 1, 1957, and on that date each leasehold was encumbered by a mortgage owned by the New York State Employee's Retirement System and guaranteed by the Federal Housing Administration. There was also an outstanding loan made by the Air Force to the builder to enable it to complete the projects. It was stipulated that as of May 1, 1957, there was a total balance due on the mortgages of $6,145,694.31, and a balance due on the Air Force loan of $410,771.26, subject to any credits and offsets in favor of defendants.
 
 
 5
 No. 12497.
 
 
 6
 The court viewed the premises and heard evidence introduced by both parties on the issue of just compensation. In addition there was a stipulation of certain uncontroverted facts. There was no evidence of comparable sales. After reviewing the evidence on the various factors found by the court to be relevant to just compensation (see the memorandum opinion referred to in footnote 2), the trial court found that the reasonable construction cost of the two projects was approximately $8,200,000, without builder's and architect's fees; and that the fair cash market value based on capitalization of rents was about $6,950,000. The court then finally found that "based upon the competent evidence and the view of the premises, that the defendants as owners of the leasehold interests are entitled to just compensation as of May 1, 1957, in the amount of $7,100,000," and judgment was entered accordingly, the award to include the amounts due on the mortgages and the Air Force loan and to bear interest at the rate of 6% as provided in the Declaration of Taking Act, 40 U.S.C.A. § 258a.
 
 
 7
 Defendants contend that the judgment should be reversed and a mandate issued directing judgment based on a proper finding of reproduction cost less depreciation in the sum of $9,150,000 as established by their evidence. The government makes no complaint as to the amount of the award of $7,100,000 insofar as the district court adopted fair market value as the measure of just compensation.
 
 
 8
 We have carefully considered the several rulings of the trial court with reference to the evidence and find no prejudicial error. We hold that there is more than ample competent evidence to support the award of $7,100,000. We are not required to guess or speculate on how the district court arrived at this final figure. Where there is no evidence of comparable sales it has been aptly said: "* * * assessment of market value involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety * * * [and that this] involves, at best, a guess by informed persons." United States v. Miller, 1943, 317 U.S. 369, 374-375, 63 S.Ct. 276, 280, 87 L.Ed. 336. (Emphasis added.)
 
 
 9
 It is well settled that in condemnation proceedings the award of just compensation "should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose," the courts retaining the concept of market value as a practical standard. United States v. Miller, supra, at pages 373-374 of 317 U.S., at page 280 of 63 S.Ct. Or, as it has been more concisely stated, it is "market value fairly determined." Olson v. United States, 1934, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236.
 
 
 10
 Defendants' contention that the district court should be confined to a consideration of reproduction cost less depreciation is not well taken in this case, and such method generally is held to be one of the least reliable indicia of market value. United States v. 49,375 Square Feet of Land, etc., D.C.S.D.N.Y. 1950, 92 F.Supp. 384, 388, affirmed United States v. Tishman Realty & Const. Co., 2 Cir., 1952, 193 F.2d 180, certiorari denied 343 U.S. 928, 72 S.Ct. 761, 96 L. Ed. 1338. We are not satisfied that the property interest taken in this case is so unique as to take it outside the general rule. We have carefully examined defendants' many arguments to the contrary and the cases on which they seek to rely and do not find them to be controlling here.
 
 
 11
 Much has been written on the subject of "just compensation" and the cases are legion giving various expressions as to how it should be determined. In the final analysis, however, when the condemnee has been awarded just compensation based on market value fairly determined, having regard for the various factors dictated by the circumstances of each particular case, he may be said to have been made whole.
 
 
 12
 We hold that the district court, in its finding of just compensation in the amount of $7,100,000, did not err in its interpretation of the evidence and its findings based thereon and that it applied the correct legal criteria in so doing. As to the appeal in No. 12497 the judgment is
 
 
 13
 Affirmed.
 
 
 14
 No. 12498.
 
 
 15
 In its declaration of taking the government specifically condemned all right, title and interest of defendants in each of the leaseholds, subject to each mortgage. The district court held, in effect, that state law (Illinois) applies to the definition of the property interest the government can condemn; that a leasehold interest subject to a mortgage is not a recognized legal estate in Illinois, since in Illinois a mortgagee has only a lien and not a vested interest in the leasehold; and that the entire leasehold must be condemned, including the interest of the mortgagee, and the lien of the mortgagee to be transferred to the award. This holding is the subject of the counter-appeal by the United States in No. 12498, the government's contention being that federal and not state law controls.
 
 
 16
 The contested issue is whether the federal government can, under its power of eminent domain, and more specifically under its power to condemn military housing pursuant to 42 U.S.C.A. § 1594a, condemn a leasehold interest subject to a mortgage, a property interest unknown to the law of Illinois.
 
 
 17
 The practical effect of the holding of the district court is to grant to defendant 6% interest on the amount of the award for the period from May 1, 1957, the date of taking, to July 15, 1958, the date of payment of the judgment. This results, so the government contends, in a "windfall" to defendants of approximately $148,843.57, which is 2% interest for this period on the amount of the mortgages (the difference between the 4% interest payable under the terms of the mortgages and the 6% interest payable under the Declaration of Taking Act).
 
 
 18
 The government sought to prevent this by filing a motion for an order declaring the judgment satisfied, in which motion it recited, inter alia, the facts concerning the mortgages and the balance due on the Air Force loan, deposits made by the government, and the government's position that defendants "have neither in law nor in fact any right to the amount representing the unpaid balance of the said mortgages nor any right to interest on the portion of the award equivalent to the unpaid balance on said mortgages." The government's motion was denied by the district court in its order entered on July 17, 1958.
 
 
 19
 The district court reasoned that its holding was dictated because Illinois is a lien theory state and state law governs, citing Swanson v. United States, 9 Cir., 1946, 156 F.2d 442, 447, 170 A.L.R. 258, certiorari denied, Spokane Portland Cement Co. v. Swanson, 329 U.S. 800, 67 S.Ct. 492, 91 L.Ed. 684, for the proposition that the mortgagee's rights are determined by state law. We think the district court's reliance on Swanson is misplaced. In that case, the dispute was between the mortgagor and the mortgagee as to their respective rights, and the court properly held that the extent of the title or right of one condemnee as opposed to another condemnee is determined by local law when such a dispute arises in the course of federal condemnation proceedings. No direct federal interest was involved. In the case before us here we have an entirely different question presented. There is no dispute here between defendants and the mortgagees, the latter not even being parties to this proceeding. The sole issue is whether the United States has the power to condemn only the interests of defendants and to exclude the rights of others not made parties.
 
 
 20
 The district court rejected the government's contention that it has legal authority to condemn the interest subject to the mortgage by virtue of 42 U.S.C.A. § 1594a. We agree that a literal reading of the statute does not reveal any such express authorization. Nor do we find any such specific authority in the original Housing Amendments of 1955, 69 Stat. 652, now codified into Section 1594a. However, it should be pointed out that nowhere in the statute under scrutiny does Congress expressly choose to make state laws applicable.
 
 
 21
 Defendants contend that state law should apply by citing Section 1707, 12 U.S.C.A., the original Wherry Act, which provides that "(a) The term `mortgage' means a first mortgage on real estate, in fee simple, or on a leasehold * * * and the term `first mortgage' means such classes of first liens as are commonly given * * * under the laws of the State, in which the real estate is located * * *."
 
 
 22
 The argument that this section per se incorporates state law on all issues of law was rejected in United States v. View Crest Garden Apts., Inc., 9 Cir., 1959, 268 F.2d 380. In that case, there was a conflict as to whether state law or federal law applied with reference to the appointment of a receiver in an action to foreclose an FHA mortgage. In construing Section 1707 of 12 U.S.C.A., the Ninth Circuit found that it accepted and incorporated some of the incidences of state definition of mortgages, but that it was not Congressional intent to incorporate all state laws. The court held that federal law controls in such a situation and remanded the case for a determination as a matter of federal law whether the facts warranted the appointment of a receiver.
 
 
 23
 There is some indication of Congressional intent from the statute under which this action is brought. Subsections (e), (f) and (g) of 42 U.S.C.A. 1594a, refer to housing acquired under this section and provide that the government may thereupon rent the property, pay the mortgage, insurance and other charges and expenses. Since this is not limited to situations where there is a purchase, this would seem to imply an intent that the government can condemn a leasehold subject to a mortgage. Such is the express holding of another district court in United States v. Certain Interests in Property in Macomb County, Michigan, Selfridge Apartments, Inc., et al., D.C.E.D.Mich.S.D., 178 F.Supp. 125.
 
 
 24
 Finally, in our opinion, the Supreme Court of the United States in a recent opinion has made it abundantly clear that federal law rather than state law governs in federal eminent domain cases. United States v. 93.970 Acres of Land, 1959, 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275. In that case, the government revoked a lease pursuant to the terms of the lease itself, but rather than litigate the question of its right to such revocation, in order to avoid delay, it also condemned whatever interest the lessee might retain. Under Illinois law, the owner of the leasehold claimed that the condemnation proceeding was an election of remedies and that thereby the government must abandon its revocation and that this was an implied recognition that certain property was retained by the lessee for which it would be entitled to just compensation. This circuit, in 258 F.2d 17, 24 (1958), with one judge dissenting, did not pass upon the question of whether state or federal law applies in federal condemnation proceedings as to election of remedies, deciding that both federal and state law compelled such an election by the government in that case. The Supreme Court reversed, holding as a matter of federal law that there need be no election and that state law did not control. The language of Mr. Justice Black, 360 U.S. at page 332, 79 S.Ct. at page 1196, is significant:
 
 
 25
 "Respondents argue, however, that election of remedies is part of the law of Illinois and that Illinois law applies here. We cannot agree with this view. Condemnation involves essential governmental functions. See Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449. We have often held that where essential interests of the Federal Government are concerned, federal law rules unless Congress chooses to make state laws applicable. It is apparent that no such choice has been made here." (Footnotes omitted.)
 
 
 26
 Condemnation being an essential governmental function and Congress not having chosen to make state law applicable to the definition of property interests condemned by the government, it follows that the United States is not limited to condemnation in terms known to the state, but rather may define such interests in terms of federal law.
 
 
 27
 We hold, therefore, that the United States can condemn a leasehold interest subject to an existing mortgage lien thereon, and that the district court erred in applying Illinois law to the contrary.
 
 
 28
 It is ordered that that part of the judgment of the district court entered in this action on June 25, 1958, which includes the amounts due on the mortgages and interest thereon, and the further order of the district court entered in this action on July 17, 1958, denying the motion of the United States for an order declaring the judgment satisfied, be reversed, and that this cause be remanded to the district court for the entry of judgment and such further proceedings as may be necessary not inconsistent with this opinion. It is further ordered that, consistent with our holding in No. 12497, the valuation of defendants' interests as determined by the district court be not disturbed.
 
 
 
 Notes:
 
 
 [1]
 "Wherry Act", 12 U.S.C.A. § 1748 et seq
 
 
 [2]
 The opinion of the district court is reported at 165 F.Supp. 474, 482 and contains findings of fact, conclusions of law, various provisions of the pertinent leases and a résumé of the evidence taken in this case. In the interest of brevity, these will not be set out in detail here and reference is made to Chief Judge Platt's opinion for such matter