**UNITED STATES of America, Plaintiff,**

v.

**215.7 ACRES OF LAND, MORE or LESS, situate in KENT COUNTY, STATE of DELAWARE, and Francis Bergold and Margaret Bergold, Husband and Wife, Defendants.**

Civ. A. No. 87–173–JLL.

United States District Court,
D. Delaware.

Aug. 1, 1989.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., for plaintiff.

Clark W. Furlow and Anne Bookout Horgan of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., and Dennis J. Riley, Joseph A. Artabane and Lisa Smith Sanders of Spriggs & Hollingsworth, Washington, D.C., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

This case arises out of the condemnation by the United States (the "Government") of property near Dover, Delaware, for expansion of the Dover Air Force Base.[1] At issue is some 217.5 acres of property which was owned by Francis and Margaret Bergold. The Bergolds lived on part of the property for some thirty-five years, and operated it as a farm. They have requested a jury trial to determine the compensation they are entitled to for the taking.

Presently there are two motions before the Court. The Government has moved for a ruling *in limine* forbidding certain testimony by the Bergolds at trial regarding the value of the property. (Docket Item ["D.I."] 51.) The Bergolds have moved to compel the Government's response to certain discovery requests. (D.I. at 53.) After considering the written submissions of the parties and having held and considered oral argument, the Court will address the motions separately below.

### II. THE GOVERNMENT'S MOTION IN LIMINE

Counsel for the Government has submitted an affidavit stating the following. The Government took the depositions of both Mr. and Mrs. Bergold. (D.I. 52, Exh. A, ¶ 2.) In the course of her deposition, Mrs. Bergold "became visibly upset and tearful in discussing her family's feelings for and emotional attachment to the ...

property." (*Id.* at ¶ 3.) "She also expressed frustration about the manner in which employees of the United States Army Corps of Engineers had dealt with her and her family in the course of the taking." (*Id.*) Mr. Bergold "indicated that his estimation of the worth of his property is 3.5 million dollars." (*Id.* at ¶ 4.) "This estimation is apparently based in part upon Mr. Bergold's estimation of the particular value which the property has for his personal use and business interests and the costs to recreate his farming business at a new location." (*Id.*)

The Government seeks an order that will forbid presentation to the jury of "any evidence which does not deal solely with the issue of the fair market value of the ... property as of the date of the taking," and specifically "the sentimental attachment" the Bergolds may have to the property, "the emotional distress" they may have experienced as a consequence of the taking, and "the consequential damages, such as loss of business or relocation expenses" they may have incurred or may incur because of the taking. (D.I. 52, Exh. B, ¶¶ 1–2.)

On July 25, 1989, while these motions were before the Court, Mrs. Bergold died. However, the Court will continue to refer to the "Bergolds" as parties to this suit. As discussed *infra*, Mrs. Bergold's death is material to the Court's disposition of the Government's motion for a ruling *in limine*.

■ The Federal Rules of Evidence do not explicitly authorize *in limine* rulings. Rather, the Court may make such rulings pursuant to its inherent authority to manage the course of trials. *See Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984); *see also United States v. Romano*, 849 F.2d 812, 815 (3d Cir.1988).

---

1. Jurisdiction in this case is predicated on the statutory authority for condemnation set forth in 40 U.S.C. §§ 257–258a, the specific grant of jurisdiction for condemnation cases in 28 U.S.C. § 1358, and the general grant of jurisdiction in 28 U.S.C. § 1345 for cases where the United States is plaintiff. Federal law governs this case. *United States v. 93.970 Acres of Land,* 360 U.S. 328, 332–33, 79 S.Ct. 1193, 1195–96, 3 L.Ed.2d 1275 (1959).

First, the Government contends that the Bergolds "have made plain in discovery the strong feelings they have for their property and the distress ... [the taking has] caused them." (D.I. 52 at 7.) This, the Government argues, is "irrelevant" to the issue of just compensation and will have an "unfair prejudicial impact." (*Id.* at 7–8.)

The issue for trial is the determination of "just compensation" for the taking. U.S. Const. amend. 5; *see also United States v. 50 Acres of Land,* 469 U.S. 24, 25–26, 105 S.Ct. 451, 452–453, 83 L.Ed.2d 376 (1984); *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 3 and 9, 104 S.Ct. 2187, 2190 and 2193, 81 L.Ed.2d 1 (1984); *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707 (1930). The principle underlying just compensation is that the condemnee "is entitled to be put in as good a position pecuniarily as if his property had not been taken." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). The measure of compensation is the "value" of the condemned property at the time of the "taking." *United States v. Miller,* 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943); *see also United States v. 13.98 Acres of Land,* 702 F.Supp. 1113, 1116 (D.Del.1988).

In most cases just compensation can be determined by the property's "fair market value." *United States v. 564.54 Acres of Land,* 441 U.S. 506, 511, 99 S.Ct. 1854, 1857, 60 L.Ed.2d 435 (1979); *see also 50 Acres of Land,* 469 U.S. at 25, 105 S.Ct. at 452; *Kirby,* 467 U.S. at 10, 104 S.Ct. at 2194.[2] That is, "what a willing buyer would pay in cash to a willing seller." *Miller,* 317 U.S. at 374, 63 S.Ct. at 280; *see also Kirby,* 467 U.S. at 10, 104 S.Ct. at 2194. This measure accounts for "[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future ... to the full extent that the prospect of demand for such use affects the market value while the property is private-

ly held." *Olson,* 292 U.S. at 255, 54 S.Ct. at 708.

The Bergolds do not contend that just compensation should be measured by something other than fair market value. In fact, they concede that this is the proper measure. (*See, e.g.,* D.I. 55 at 4, 8.) Rather, they argue that they are entitled to testify and "to introduce all evidence that may affect a willing buyer-willing seller transaction," and that if either of them gets emotional on the witness stand, "[d]emeanor" is for the jury to weigh and is not a basis for excluding their testimony. (*Id.* at 5–7.)

 Landowners are qualified to testify on the value of the taking. *Kinter v. United States,* 156 F.2d 5, 7 (3d Cir.1946); *see also United States v. 79.20 Acres of Land,* 710 F.2d 1352, 1357 (8th Cir.1983); *United States v. 3,698.63 Acres of Land,* 416 F.2d 65, 67 (8th Cir.1969); *United States v. 1,516.90 Acres of Land,* 405 F.2d 913, 914–15 (6th Cir.1968), *cert. denied,* 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969); *United States ex. rel. TVA v. Easement and Right of Way,* 405 F.2d 305, 307 (6th Cir.1968); *United States v. Sowards,* 370 F.2d 87, 92 (10th Cir.1966); *United States v. 60.14 Acres of Land,* 362 F.2d 660, 667–69 (3d Cir.1966); *Love v. United States,* 141 F.2d 981, 983–84 (8th Cir.1944). But, the Government apparently is concerned that the Bergold's testimony will be nothing more than their own emotion-filled version of "The Grapes of Wrath," and an account of their sentimental attachment to the property. On this point the Bergolds concede that "sentimental and other emotional ties [to the property] do not constitute a factor of fair market value." (D.I. 55 at 4.) Moreover, it appears that the Government's concern in this regard was primarily with the prospect of Mrs. Bergold's testimony. Of course, with Mrs. Bergold's death, there will be no live testimony by her at trial. Therefore, the Court concludes that a ruling *in limine* is neither

---

**2.** The Supreme Court has noted that just compensation may, in some circumstances, require a different measure. Such as where fair market value would be unjust or cannot be determined.

*See 564.54 Acres,* 441 U.S. at 511–12, 99 S.Ct. at 1857–58; *see also 50 Acres,* 469 U.S. at 37, 105 S.Ct. at 458 (O'Connor, J., concurring); *Kirby,* 467 U.S. at 10 n. 15, 104 S.Ct. at 2194 n. 15.

necessary nor prudent at this point in order to manage these proceedings. The Court trusts that counsel will present evidence of value mindful of the Rules of Evidence as well as any foreseeable departures from propriety. If counsel ignores this guidance or there are unforeseeable departures at trial, the Court can then employ other means available for managing the proceedings.

Second, the Government contends that Mr. Bergold has stated the property was worth 3.5 million dollars "to him" based, apparently, on the cost "which he perceives will be required to establish an agricultural business comparable to the one he now operates." (D.I. 52 at 9.) The Government argues that "the business value of property is not recoverable in a condemnation suit." (*Id.*)

On this point, the Bergolds argue that "[s]uch factors as site preparation and equipment and plant facilities in use may be best measured by the cost to reproduce these efforts or items," and that "[t]he productivity of the farm obviously would influence the fair market value." (D.I. 55 at 15.) "Therefore," they argue, "consideration of the business value of the farm in determining ... [its] fair market value ... is proper." (*Id.* at 15–16.)

■ There are two issues mired in these arguments, that of "replacement cost" and of "business value." With respect to the former, as the Court noted, *supra*, the measure of just compensation is fair market value of the property as taken. The measure is *not* replacement cost of the property or any part of it. *See 564.54 Acres of Land*, 441 U.S. at 515–16, 99 S.Ct.

at 1859–60. Fair market value is just compensation for those who must replace condemned property, even with more expensive substitutes. *50 Acres of Land*, 469 U.S. at 33, 105 S.Ct. at 456. This does not mean, however, that evidence of replacement or reproduction cost may not be admitted on the issue of fair market value. *See 50 Acres of Land*, 469 U.S. at 36 n. 24, 105 S.Ct. at 458 n. 24. But, the admissibility of any such evidence, like any other, is subject to the Rules of Evidence. *Id.*[3] The admissibility of particular evidence is not before the Court today.

■ With respect to "business value," the jury may consider the property's "adaptability for use in a particular business" in determining fair market value. *See Mitchell v. United States*, 267 U.S. 341, 344–45, 45 S.Ct. 293, 294, 69 L.Ed. 644 (1925). Fair market value is what a willing buyer would pay a willing seller for the condemned property. Facts which would bear on this transaction and the demand for the property may be considered.[4] But the jury may not consider special value to the Bergolds "arising from [the property's] adaptability to ... [their] particular use." *See 564.54 Acres of Land*, 441 U.S. at 511, 99 S.Ct. at 1857. Therefore, to the extent evidence of the property's "adaptability for use in a particular business" is relevant to fair market value (or what a willing buyer would pay), such evidence is not now properly subject to a ruling *in limine*. Evidence of special value of the property to the Bergolds arising from its adaptability to their "particular" use will not be admissible.

---

**3.** The taking apparently included certain migrant labor housing facilities. The facilities were not required to conform to current standards, since they were "completed or under construction" prior to April 3, 1980 or were the subject of a signed contract for construction prior to March 4, 1980." *See* 20 C.F.R. § 654.401 (1988). Instead, the facilities were required to comply with the less stringent ETA standards then in place. *Id.* The Government does not contest that a purchaser would not be required to conform the facilities to current standards. Furthermore, the parties have not pointed specifically to evidence they intend to

introduce. But the Court notes, for guidance, that it has serious questions regarding the relevance of any evidence concerning the replacement cost of facilities conforming to current standards.

**4.** Counsel is cautioned, however, that the jury's function is to determine fair market value from the evidence. As such, while it may in the end be counsel's object to sell a picture of the evidence to the jury, it is the function of neither the Bergolds nor any other witness to sell the property to the jury.

## III. THE BERGOLD'S MOTION TO COMPEL

The Bergolds seek an order pursuant to Fed.R.Civ.P. 37(a) compelling the Government to produce responses to certain discovery requests, and seek an order pursuant to Fed.R.Civ.P. 37(a)(4) that the Government pay their expenses for this motion. (D.I. 53.) They have filed 44 pages of written argument contending that they are entitled to a 1979 appraisal of the property prepared by the Government's appraisers, that they are entitled to all other prior appraisals of the property by the same appraisers, that they are entitled to depose and to have the reports and work papers of two of the Government's nontestifying experts regarding the value of the property, and that they are entitled to any correspondence between the United States Army Corps of Engineers and the Government's appraisers. (*See* D.I. 54 at 2 *et seq.* and D.I. 57 at 1 *et seq.*) The Court will address these contentions separately below.

### A. *The 1979 Appraisal*

The Bergolds contend that during the deposition of one of the Government's expert appraisers, Mr. Robert Appel, it was discovered that he and another of the Government's experts, Mr. Arnold Goldsborough, had prepared an appraisal of the property in 1979. (D.I. 54 at 8.) They further contend that Appel stated at his deposition that "he and Goldsborough had relied in part on computations and conclusions developed" in the 1979 appraisal in making current evaluations of the property's value. (*Id.*) As such, the Bergolds argue that they are entitled to the 1979 appraisal "as it forms the bases for certain conclusions arrived at ... in the present action," and that "the 1979 appraisal may reveal certain facts and conclusions inconsistent with conclusions reached ... in the present action." (*Id.*) They further argue that the 1979 appraisal is relevant in order to calculate the value of encumbrances on the property. (*Id.*)

The Government contends that in 1979 Appel and Goldsborough "were experts retained as consultants in anticipation of litigation" but that "no decision was made about whether they would be called to testify." (D.I. 56 at 6.) Therefore, the Government argues, their "work product" is covered by Fed.R.Civ.P. 26(b)(4)(B). (*Id.*)

■ There is no question but that the Government has identified Appel and Goldsborough as experts it expects to rely on at trial. As such, Fed.R.Civ.P. 26(b)(4)(A)(i) requires, upon request, the disclosure of the expert's identity, the subject matter on which the expert is expected to testify, and the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. *See* Fed.R.Civ.P. 26(b)(4)(A)(i). Here, this includes facts on which the expert opinions to be proffered in this suit are based as well as facts taken from prior appraisals or opinions and relied on in the opinions in this suit. For example, if an expert opinion is based, in part, on devaluation of the property due to a prior sale of an encumbrance, and the devaluation is calculated by using figures or a ratio of figures obtained or calculated from a prior appraisal, disclosure of the figures as well as the *factual* components of them is required here under Rule 26(b)(4)(A)(i).[5] Therefore, to the extent the 1979 appraisal contains facts that underlie the opinions in this suit, the Court will order the Government to disclose these facts.

■ This, however, does not end the inquiry. For unless the remainder of the 1979 appraisal is protected, it too is discoverable under the broad provisions of Rule 26(b)(1).

Rule 26(b)(4)(B) provides that unless "exceptional circumstances" are shown, facts known or opinions held by an expert "who

---

5. The Government contends that Appel said they did not rely on the 1979 appraisal for their current opinions. (D.I. 56 at 7.) But the portion of his deposition provided to support this contention can be read to indicate that Appel and Goldsborough in fact referred to facts which were relied on for the 1979 appraisal in order to come up with a suitable ratio to reduce the current value of the fee due to encumbrances.

has been retained or specially employed" by a party "in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial" may not be discovered. *See* Fed.R.Civ.P. 26(b)(4)(B). Therefore, initially the Government bears the burden to show that the rule applies to the 1979 appraisal. If it does, the Bergolds must show "exceptional circumstances" to discover the 1979 appraisal.

The Government has put in a sworn affidavit of Mr. Gerald P. Boggs stating that in 1977 he was "Chief" of the "Acquisition Branch" of the "Real Estate Division" of the Army engineers. (D.I. 56, Exh. C.) He states that he hired the Goldsborough Company to do an appraisal of the property in anticipation of litigation over the issue of just compensation that could "arise" from the taking of a "clear zone easement" and "fee." (*Id.*) The Government also represents that at that time, "no decision was made about whether they would be called to testify." (D.I. 56 at 6.) Furthermore, this litigation was not commenced until 1987.

The facts show that the Government did not "expect" to call Appel or Goldsborough as a witness in this litigation when it hired them to make the 1979 appraisal, although they were hired "in anticipation of litigation" over takings involving the property in suit. Appel and Goldsborough were not Government employees, they were hired guns. In view of the foregoing, the Court finds that Rule 26(b)(4)(B) is applicable to the 1979 appraisal.

However, the Bergolds have not shown "exceptional circumstances." That they did not conduct an appraisal of their own in 1979, or that the 1979 appraisal "may" to some extent be inconsistent with current appraisals does not constitute exceptional circumstances. Any undue disadvantage befalling the Bergolds because they did not conduct their own fact-gathering in 1979 will be dissipated by disclosure to them of any such facts gathered and relied on by the Government. It is also noteworthy that the Bergolds have had, and have taken advantage of, an opportunity to depose Ap-

pel. Therefore, except to the extent noted above, the Bergolds' motion to compel production of the 1979 appraisal will be denied.

### B. *Prior Appraisals of the Property by Appel and Goldsborough*

Next, the Bergolds seek two prior appraisals of the property by Appel and Goldsborough prepared *since* this action was originally filed. (D.I. 54 at 14; D.I. 57 at 10.) They contend that "[s]ome opinions and conclusions may have changed, some may not ... [, and that they] cannot ascertain the differences in the opinions and conclusions presently expressed by Appel and Goldsborough and those set forth in the earlier appraisals, or what caused those differences in conclusions, without the production of the earlier appraisals." (*Id.*)

The Government counters with several arguments. First, it argues that this motion to compel is not in accord with the rule for discovery of expert materials, because discovery beyond the interrogatories permitted by Rule 26(b)(4)(A)(i) can be had only "upon motion." (D.I. 56 at 10–12.) Second, the Government argues that the Bergolds have shown no "legitimate need" for the prior appraisals, and that it would be unfair to entitle the Bergolds to benefit from the Government's background work so that the Government's experts can be cross-examined at trial. (*Id.* at 12–17.)

As noted *supra*, Appel and Goldsborough are indeed experts the Government expects to call at trial. To that extent, the Bergolds are entitled to certain information about their testimony. *See* Fed.R.Civ.P. 26(b)(4)(A)(i). Beyond this, the Court *may*, upon motion, direct further discovery. Fed.R.Civ.P. 26(b)(4)(A)(ii).

Here, the Bergolds do not seek further discovery of the substance of the expert testimony or opinions which will be offered by the Government at trial. Rather, they want to see if there is anything in the prior appraisals that is inconsistent with the opinions to be offered at trial.

■ The Court will not exercise its discretion to permit discovery of the appraisals. It is plainly a purpose of Rule

26(b)(4)(A) to provide parties with enough information about the substance of expert testimony in order to prepare for cross-examination. *See* Advisory Committee Notes Subdivision (b)(4). To this end, the Court is satisfied that the information already provided (and which may be supplemented in accordance with Section III.A. *supra* ), including that obtained through Mr. Appel's deposition, will be sufficient. The Bergolds can adequately challenge the Government's opinions at trial with opinions of their own, since they have (or will have) the basis for the Government's opinions beforehand. The Court will not permit the Bergolds' admitted "fishing expedition" on the chance that a prior appraisal *may,* to some extent, be inconsistent with the opinions for which information has or will be provided to them and on which the Government will rely at trial.

Therefore, the Bergolds' motion to compel will be denied with respect to the two prior appraisals.

### C. *Nontestifying Experts*

 Third, the Bergolds contend that they are entitled to depose and have the work-papers of "two other experts [retained by the Government] in anticipation of litigation or preparation for trial [but] not formally designated to testify." (D.I. 54 at 15.) One of the experts is an appraiser, and one an engineer. The Bergolds argue that their inability to obtain similar opinions to those held by the two experts in question and their expectation that the Government will, in fact, call these experts at trial "constitute exceptional circumstances warranting the discovery ... now." (*Id.* at 18.)

The thrust of the Bergolds' argument is that these two experts have continued to update their opinions, even very recently. (D.I. 57 at 16.) But, contend the Bergolds, they cannot do the same because they have vacated the premises. (*Id.*) They argue that certain conditions on the property have changed, and therefore valuations of the changed property would be inaccurate, and their own valuations would be outdat-

ed. (*Id.* at 16–17.) Furthermore, time constraints and financial limitations prevented them from reinspecting their property before vacating it. (*Id.* at 17–18.)

The Government answers that it has not yet decided whether the two experts in question will, in fact, be called at trial. (D.I. 56 at 18.) Therefore, it argues, the Bergolds must show "exceptional circumstances" to obtain the discovery they seek, but have failed to do so. (*Id.* at 18–19.)

It is conceded by the Bergolds that the experts in question were retained "in anticipation of litigation or preparation for trial." *See supra.* Furthermore, it is not contended that the Government "expects," at this time, to call these experts at trial. The Government candidly admits that it has not yet decided. Therefore, the Government is correct that the Bergolds cannot obtain the discovery absent "exceptional circumstances" under which they cannot obtain the facts or opinions on the same subject by other means. *See* Fed.R. Civ.P. 26(b)(4)(B).

The Bergolds' case for "exceptional circumstances" here borders on frivolous.[6] The issue for trial is the value of the property at the time of the taking. If the condition of the property has changed, the value of the changed property is not at issue in this lawsuit. If the Government relies on valuation of the property "as changed," it will be the Bergolds' right to point that out. Furthermore, when and if the Government decides that these experts will be called at trial, the Bergolds will be entitled to certain information regarding their testimony. *See* Fed.R.Civ.P. 26(b)(4)(A)(ii).

The Bergolds have failed to show "exceptional circumstances." Therefore, their motion to compel will be denied with respect to these two experts.

### D. *The Corps of Engineers Correspondence*

Finally, the Bergolds want correspondence between the U.S. Army Corps of Engineers and the Government's experts.

---

**6.** *See* Fed.R.Civ.P. 11.

[redacted]

(D.I. 54 at 18.) They contend that the Government's opinions are based on "facts and opinions contained therein." (*Id.*)

The Government contends that its appraisers, indeed, obtained information from the Corps such as the metes and bounds of the taking, but that this information has already been provided to the Bergolds. (D.I. 56 at 21.) The rest of the correspondence, the Government argues, is protected from discovery by Fed.R.Civ.P. 26(b)(3). (*Id.*)

Rule 26(b)(3) provides in pertinent part that:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Materials covered by the rule are discoverable "only" upon a showing of substantial need. But, rather than establishing any need, the Bergolds simply argue that the correspondence contains information relied on by the Government's experts for their opinions and invite the Court to inspect the correspondence *in camera.* (*See* D.I. 54 at 18–20; D.I. 57 at 19–20.)

[redacted] The Court accepts the Government's representation that it has provided the Bergolds with information from the correspondence which is relied on by its experts. Furthermore, the Court agrees with the Government that the correspondence is otherwise protected by Rule 26(b)(3). The Government has shown it to have been prepared in anticipation of trial by its representative. Therefore, having failed to establish "substantial need" as required by the rule, the Bergolds' motion to compel will be denied with respect to the Corps correspondence.

The Bergolds' motion for expenses pursuant to Fed.R.Civ.P. 37(a)(4) will be denied. The Bergolds' motion was to compel, *inter alia,* production of the 1979 appraisal in its entirety. The Court concluded that, except to the extent it contains facts currently relied on, it is protected. Therefore, the Government's opposition to the Bergolds' motion was substantially justified. *See* Fed.R.Civ.P. 37(a)(4).

An order will be entered in accordance with the foregoing.