**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

        v.

300 UNITS OF RENTABLE HOUSING,
LOCATED ON APPROXIMATELY 57.81
ACRES OF EIELSON AIR FORCE BASE,
              *Defendant,*

        and

POLAR STAR ALASKA HOUSING
CORPORATION,
              *Defendant-Appellant.*

No. 09-35990

D.C. No.
4:06-cv-00023-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
July 29, 2011—Anchorage, Alaska

Filed February 14, 2012

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Thomas F. Geselbracht (argued), DLA Piper LLP, Chicago, Illinois.; Cory R. Borgeson, Borgeson & Burns, P.C., Fairbanks, Alaska, for the defendants-appellants.

Ignacia S. Moreno, Assistant Attorney General; John L. Smeltzer (argued), John O. Holm, David O. Vollenweider, United States Dept. of Justice, Washington D.C., for the United States, plaintiff-appellee.

## OPINION

PER CURIAM:

At the end of a twenty-year lease program in which Polar Star Alaska Housing Corp. ("Polar Star") owned 300 units of family housing located on Eielson Air Force Base, Alaska, and leased them back to the Air Force, Polar Star and the United States could not agree on the purchase price of the houses. They similarly could not agree on the amount of rent payable for an additional year of the lease. The United States first sent notice of a one-year renewal of the lease, then filed a protective eminent domain action to condemn a five-month leasehold in the houses. The district court ruled that the United States' renewal notice was effective, and therefore no taking had occurred. The district court then concluded that

Polar Star's request that the court determine the amount of rent due on the renewal term was, in essence, a claim on the contract over which it lacked jurisdiction, and dismissed. Polar Star appeals a number of the district court's rulings. Because each of these rulings was correct, we affirm

## BACKGROUND

In 1984, the United States Air Force (at times referred to as "Air Force," "United States," or "Government") solicited bids for a military housing project on Eielson Air Force Base ("Eielson AFB") called the Cool Home Housing Project. In this first-of-its-kind project, the Air Force would permit a developer to build 300 houses on Eielson AFB. The Government would retain ownership of the real property on which the houses would be built, but the developer would own the houses and lease them to the Air Force for a term of 20 years. As part of the project, the Air Force would lease approximately 57.81 acres of land to the winning developer for a period of 23 years. The 23-year period was designed to encompass the 20-year term of the project lease and allow for a three-year period of construction.

Ben Lomond, Inc. ("Lomond") submitted the successful bid, and the Air Force awarded it the contract. The parties executed two leases: a Ground Lease, in which the Government leased the land to Lomond to build the houses, and a Project Lease, in which Lomond leased the houses it built back to the Government. At the end of the Ground Lease, the Government had the option to purchase the houses, renew the lease, or have Lomond remove the houses from the property.

The executed Ground Lease is not simply the draft Ground Lease with the blanks filled in by hand. Rather, the Ground Lease was completely retyped, and several significant changes were made in addition to filling in the blanks for party names and dates (including the addition of several conditions that were not in the draft lease). As provided in the

draft lease, the total rent under the Ground Lease was one dollar. The Ground Lease purports to encompass "a term of twenty-three (23) years, beginning 7 January, 1985, and ending 6 January, 2007," which is a span of only 22 years. This discrepancy apparently went unnoticed by the parties until sometime in late 2006, when the Government first asserted its position that the lease expired on 6 January 2008, 23 years after the beginning date, rather than 6 January 2007.

Lomond performed the Project Lease until sometime in 1994, when it became embroiled in a dispute with Fairbanks North Star Borough over property taxes, which resulted in Lomond defaulting on its financing obligations to Aetna Life Insurance Co. The Alaska Supreme Court eventually decided that Lomond's leasehold interest was subject to property tax. *Cool Homes, Inc. v. Fairbanks North Star Borough*, 860 P.2d 1248 (Alaska 1993). Thereafter, Aetna foreclosed. Polar Star purchased the housing units from Aetna in 1995. During the purchase process, the Air Force issued a Lease Status Report, which repeats the mistake in the underlying contract: "The Outlease [Ground Lease] is for a term of twenty-three (23) years, beginning 7 January 1985, and ending 6 January 2007. . . ."

The Government and Polar Star also executed a novation of the leases at issue. Pursuant to the novation, Polar Star assumed all rights and obligations from Aetna (which had received Lomond's rights and obligations through the foreclosure proceeding), specifically including the Ground Lease and the Project Lease. The novation did not describe in detail the provisions of the leases or the terms thereof.

The Project Lease was the first lease set to expire, with an expiration date of August 6, 2006. As the expiration date approached, it became clear that the parties would not be able to agree on a purchase price in time for the Government to obtain Congressional approval for the payment before the expiration date. As a result, the Government exercised its

option to renew the Project Lease for an additional year by giving notice of a one-year renewal on May 18, 2006. The parties discussed the rent for the renewal term, but again, were unable to agree prior to the expiration of the original lease.

The United States then filed an eminent domain action to condemn a five-month leasehold interest in the houses, which evolved into a quiet title action. In a series of rulings on various motions, the district court first decided that the United States had renewed the Project Lease for one year and therefore no taking had occurred. As a result, Polar Star was not entitled to just compensation. Following additional motions and briefing, the district court decided, based on *United States v. Park Place Associates, Ltd.*, 563 F.3d 907 (9th Cir. 2009), that it did not have jurisdiction to set the rent for the renewal term and dismissed the action. Polar Star appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### A.   Standard of Review

A district court's interpretation of a lease, like any contract, is reviewed de novo. *Conrad v. Ace Property & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008). The district court considered evidence and made findings of fact reforming the contract. Findings of fact made in an award of reformation, an equitable remedy, will not be disturbed unless clearly erroneous. *Bentley Ranches, Inc. v. Borgerson*, 732 F.2d 1395, 1396 (9th Cir. 1984) (reviewing district court's reformation of a contract for clear error pursuant to Fed. R. Civ. P. 52).

### B.   Renewal of a Governmental Lease

Polar Star contends the Government's May 18, 2006 renewal notice was insufficient to renew the Project Lease because the renewal option did not specify the amount of rent

for the renewal term, and because the parties were not able to reach agreement on the rent for the renewal term. Polar Star reasons that therefore a taking occurred when the Government filed its eminent domain claim and declaration of taking. The Government responds that the parties need not agree on the rent to make the renewal effective because the option contained a method for determining the rent and because the option only required notice to effect a valid renewal. Specifically, Article V of the Project Lease provides:

> Upon expiration of the twenty (20) year lease term, this Lease may be renewed for subsequent annual periods at the Lessee's [Government's] option. The rent for such subsequent periods must be renegotiated based upon the remaining equity investment. The renegotiated rent each year will not exceed ten (10%) percent of the fair market value of the improvements erected on the land as determined by a duly qualified appraiser selected with the approval of the Lessor and Lessee. Any disagreement with the appraisal shall be subject to Article XIV, Disputes, herein. Lessor will submit to the Lessee all required evidence necessary for renegotiation. . . . The statement of intent of the Lessee to renew the Lease must be mailed to the Lessor no later than sixty (60) days prior to the expiration of the lease term.

**[1]** Both parties agree that federal law governs construction of the agreements. Where Congress prescribes no rule by statute, federal courts generally "apply to the construction of government contracts the principles of general contract law." *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947). Because we have not previously addressed whether the amount of rent for a renewal term must be specified in the option to renew a governmental lease to make that renewal valid, we look to such general contract law principles. Where a contract provides a practicable method for establishing the amount of rent in the event the parties cannot themselves

agree, the option is enforceable. *Altman v. Alaska Truss & Mfg. Co., Inc.*, 677 P.2d 1215, 1221 (Alaska 1983) (citing 2 *M. Friedman, Friedman on Leases* § 14.1, at 561 (1974) ("[T]he amount of the renewal rent is sometimes left for future determination. If the determination is to be made by arbitration or appraisal, the renewal is enforceable.")). *See also Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 137 (2d Cir. 2005) (applying New York law); *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (applying New Jersey law). We see no reason for a different rule when the Government is a party to the lease.

**[2]** Because the Project Lease included a method the court could apply to determine the rent, we hold that the option was enforceable. The fact that the parties did not ultimately agree on the rent prior to the renewal date did not render the option invalid, because the option clause does not expressly require agreement on the rent prior to renewal.

**[3]** An option to renew a lease can only be exercised in the manner specified in the agreement, and if exercised in that manner, the lease is renewed. *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1040 (9th Cir. 2011) (citing *Williston on Contracts* § 46:12 (4th ed. 2010) ("[T]he party giving the option is protected only by the condition that the optionee can only exercise it strictly in accordance with its terms.")). The only requirement for renewal stated in the Project Lease renewal option is notice, which must be provided no later than 60 days prior to the expiration of the term. Although the option provided that renewal rent had to be negotiated, it did not require that an agreement be reached prior to the renewal or that renewal was conditioned on an agreement as to the rent. The Government provided timely notice on May 18, 2006. Thus, the Project Lease was renewed for a year in accordance with its terms.

Furthermore, the record indicates that Polar Star believed the Government's notice of renewal was effective to renew

the Project Lease for a year. Shortly after receiving the Government's renewal notice, Polar Star acknowledged the Government's "unilateral right to renew the lease," and stated that the Government has the "right to continue to use the houses and has told us they plan and intend to do so." Polar Star's letter is contrary to its assertion that the Government's option to renew the Project Lease is conditional in any way. Moreover, Polar Star never advised the Government that it did not consider the renewal valid unless and until an agreement had been reached on the amount of rent for the renewal term.

## C. The Ground Lease Term

The district court was faced with an obvious mistake in the Ground Lease. The purported term, "a term of twenty-three (23) years, beginning 7 January, 1985, and ending 6 January, 2007," can only be a mistake because the relevant parts of the term are mutually inconsistent—the time span between the beginning and ending dates is twenty-two years, not twenty-three. Reformation is an equitable remedy properly used to correct a mistake. *See North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994). The question is which *part* of the term was the mistake—the ending date of 6 January 2007 or the 23-year length.

**[4]** The district court determined that the ending date was the mistake, and that the parties intended a 23-year lease. Accordingly, the court reformed the contract. Polar Star has not shown clear error, so our court will not disturb that equitable remedy. *Bentley Ranches*, 732 F.2d at 1396.

## D. The Government's Eminent Domain Claim

**[5]** An eminent domain claim can be used by the Government to quiet title to its interest in a property, even if that interest is in a leasehold rather than fee. *United States v. 93.970 Acres of Land*, 360 U.S. 328, 329 (1959). The Government does not waive any interest it acquired through the lease

renewal by subsequently filing a claim in eminent domain, or by filing a declaration of taking. *United States v. 60.22 Acres of Land, More or Less, Situate in Klickitat Cnty., Wash.*, 638 F.2d 1176, 1178 (9th Cir. 1980).

**[6]** The Government validly renewed the Project Lease for a year on May 18, 2006. Therefore, it possessed all that it sought in its condemnation suit—a five-month leasehold in the houses.[1] Because the Government had previously acquired all the rights it sought to condemn, it took nothing through eminent domain. *Id*. There was no taking, and therefore no just compensation for an alleged taking was due.

Polar Star argues that the Government effected a de facto taking of the entire interest in the houses by virtue of its eminent domain complaint. However, the district court lacks jurisdiction to expand the scope of the eminent domain action beyond that expressed in the declaration of taking, and it may not entertain a counterclaim in an eminent domain action. *See United States v. 3,317.39 Acres of Land, More or Less, in Jefferson Cnty., Ark.*, 443 F.2d 104, 106 (8th Cir. 1971). Polar Star may be "entitled to recover damages for the actual taking of property which is not included in the declaration of taking, but the award may not be made in a condemnation suit under the theory of damages to the remainder. This must be done in a separate proceeding under the Tucker Act in the Court of Claims." *Id.*

### E.    District Court's Jurisdiction to Determine the Renewal Rent

The district court ruled that based on *Park Place*, it lacked jurisdiction to consider the question of rent and dismissed the case. Polar Star contends that the district court erred because

---

[1]Indeed, the Government possessed more than it sought to condemn, as it had already effectively renewed the leasehold for a full year, not just the five months it sought in its condemnation suit.

while *Park Place* holds that affirmative claims against the Government must be brought in the Court of Federal Claims, Polar Star had not made a claim for relief against the Government. Rather, Polar Star argues that the district court has jurisdiction to determine what the amount of rent is, but acknowledges that if the Government should then fail to pay that rent, Polar Star would have to bring a claim in the Court of Federal Claims.

The district court was certainly correct that, if Polar Star were making a claim against the Government for rent under the lease, jurisdiction would lie only in the Court of Federal Claims. *Park Place*, 563 F.3d at 933 ("the Tucker Act conditions the United States' waiver of sovereign immunity over contract-based claims seeking more than $10,000 on jurisdiction in the Court of Federal Claims"). However, as Polar Star vehemently insists, it has not made an affirmative claim asking the district court to determine the amount of renewal rent. Nonetheless, Polar Star contends that once the district court ruled that the Government had renewed the Project Lease, as a "necessary corollary" it was required to take the next step and determine the amount of rent under the renewal. Polar Star cites no authority imposing such a duty on the district court.

The Government's eventual position in its eminent domain action was that since it had renewed the Project Lease for a full year by providing notice of the renewal in accordance with the terms of the lease, it already possessed the interest which it sought to condemn. We have held that the Government does not waive an interest it acquired through a lease renewal by filing a claim in eminent domain or by filing a declaration of taking. *60.22 Acres*, 638 F.2d at 1178.

**[7]** The district court had to decide the question of whether the lease was, in fact, renewed in order to rule on the Government's eminent domain suit. Once it determined the lease was renewed, the court did not need to decide any further issues

regarding the Project Lease. Since the Government already possessed all that it sought to condemn, the district court correctly ruled there was no taking.

**[8]** Polar Star cannot demand a ruling on an action it chose not to file; indeed, here this would amount to nothing more than an advisory opinion by the district court. In other words, because the district court was not *required* to decide the rent question since that issue was not necessary to rule on the Government's eminent domain complaint, absent a proper affirmative pleading from one of the parties requesting a determination of the amount of rent, it lacked any basis for doing so. *See United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 214 (9th Cir. 1989) ("[C]ourts should not render advisory opinions upon issues which are not pressed before the court, precisely framed and necessary for decision.").

## CONCLUSION

The district court correctly decided that the government's notice of renewal successfully renewed the Project Lease for one year. The district court's finding that the expiration date of the Ground Lease was the error, and therefore the lease ran for 23 years, was not clearly erroneous. The district court correctly determined that it lacked jurisdiction to adjudicate the amount of rent due from the Government to Polar Star on the renewal. Polar Star did not file an action in district court, so the only matter before that court was the Government's condemnation action. The district court correctly determined that the condemnation action should be dismissed because the Government already owned the possessory right it sought to condemn. Polar Star's entitlement, once the lease was renewed, to rent beyond what the Government paid was not asserted on a claim or counterclaim in the district court, no doubt because claims against the Government for money damages for breach of contract must be made in the Court of Federal Claims. It may be that plaintiffs are now entitled to

pursue a claim in the Court of Federal Claims, and we intimate no view to the contrary. Accordingly, the district court's judgment of dismissal is **AFFIRMED**.